THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
DARNELL LANDIS, Defendant-Appellant.

First District (2nd Division) No. 1—89—2486

Opinion filed May 12, 1992.

Randolph N. Stone, Public Defender, of Chicago (Frank Madea, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Gael M. O'Brien, and Susan Wigoda, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE HARTMAN delivered the opinion of the court:

Defendant, Darnell Landis, appeals his conviction by a jury of aggravated criminal sexual assault (Ill. Rev. Stat. 1987, ch. 38, par. 12—14) and 30-year sentence in custody of the Illinois Department of Corrections. On appeal he questions whether (1) his conviction was improperly based upon unreliable out-of-court statements; (2) his right to confrontation of witnesses was violated by the admission of the statements; (3) he was denied a fair trial due to closing argument remarks; and (4) his sentence was excessive.

During a pretrial competency hearing, held in accordance with section 115—10 (Ill. Rev. Stat. 1989, ch. 38, par. 115—10 (section 115—10)), the six-year-old victim, who was five years of age when assaulted, was questioned. She was unaware of the difference between the truth and a lie, but cognizant of punishment for lying. The meaning of an oath, the number of days in a week or months in a year, the day, month or time of year, and her present or previous location were

beyond her knowledge. She was found incompetent and unable to understand the significance of the court and not allowed to testify.

To evaluate admissibility of the victim's alleged out-of-court statements, the hearing continued. The victim's mother testified that she lived with three of her four daughters in July of 1988, at which time defendant was her boyfriend of four months. On July 7 at 2 a.m., she went to sleep. Defendant was in her bed, and her daughters were in their bedrooms. No other men were inside the apartment, and the front and back doors were closed and locked. At 4 or 5 a.m., she awoke. Defendant was gone. Reasoning he was in the bathroom, she went back to sleep. Her daughter, who shared a bedroom with the victim, was in the mother's bed. The victim had brought her there earlier that night.

At 8 a.m., she awoke to find defendant back in bed. On her way downstairs, she noticed that the victim, who was wearing a shirt and underpants when put in bed, was naked. She never before removed her own panties. The mother returned upstairs and entered the victim's bedroom. White and brown substances were on the victim's upper thigh above her vagina. She awoke and jumped. After being asked twice if "somebody been messing with you," she asserted that defendant "stuck his thing in my t.t." "Thing" was the word she used for penis, and "t.t." was her word for vagina. This scenario occurred within 30 seconds from the time the victim woke. The victim indicated that this had happened once before. The mother left and called the police from a neighbor's home. After the police spoke with the victim alone, the mother took her to the hospital, where it was learned that the victim had contracted gonorrhea.

On cross-examination the mother asserted that the victim told her defendant "stayed on her, did it to her until he did that stuff out." Additionally, the mother heard defendant indicate to the police that he was "the one."

Chicago police officer John Hett testified that on July 7 at 8:45 a.m., he and his partner arrived at the home in response to a domestic disturbance assignment. The mother met him outside. She asserted that the victim said "defendant put his thing in her t.t." and that defendant was inside. He entered the residence, handcuffed defendant and proceeded upstairs. His partner remained with defendant.

The victim informed Officer Hett that "he put his thing in my t.t.," indicating this had happened before. He observed the white and brown substances on the child. Although he first asserted the victim did not mention defendant by name, after reading his police report, he testified that she did so. He did not recall the minor recanting or

reaffirming her statements and there was no indication of arguing between defendant and the mother. Defendant did not confess at the scene in the officer's presence.

Chicago police detective Ernest Bell testified that he arrived at the house at 9 a.m. Defendant, whom he identified in court, was in custody. Inside the home, the victim asserted "he stuck his thing in my t.t.," pointing to defendant. He spoke with her again at the hospital, where she repeated this accusation and affirmatively indicated a prior occurrence. Medical examination revealed redness and tenderness. The examining doctor observed a discharge and a white liquid outside of the vagina and on the stomach area.

On cross-examination, Detective Bell asserted the victim did not mention defendant by name. She related the occurrence to him. Defendant came into her bed while she was asleep. She awoke and he was there. He put his "thing" into her "t.t." At the police station, she pointed to a doll's vaginal area in reference to "t.t."

Following argument, the court found the necessary indicia of reliability in relation to the victim's statements made in the home. The mother and both officers were allowed to relate these statements at trial. The victim's utterances at the hospital and police station were excluded. The case proceeded to trial.

At trial, the mother related the victim's statements and testified to substantially the same sequence of events as at the preliminary hearing. She added that the victim would not speak of the events when defendant was present, and she had no prior reason to suspect sexual abuse in her household.

At trial, Officer Hett's testimony also tracked that given at the pretrial hearing, noting that "a white, like a slimy substance" was around and above defendant's crotch, around his zipper and on his underwear. He inventoried the pants and underwear, which were forwarded to the crime laboratory.

Pamela Fish, a seven-year Chicago police department criminalist, testified that she analyzed a vaginal smear and swab specimen, a pelvic swab specimen, a bed sheet, a pair of pants and a pair of defendant's underwear. Semen stains were found on the pants and underwear. There was no semen or spermatozoa on the specimens or bed sheet. She acknowledged that if defendant did not climax inside the victim, the discovery of sperm would have been affected.

Dr. Jai Arya, who examined the victim at the hospital, testified that during a complete examination he observed that her vaginal area was swollen and tender and a sticky discharge was present. A growth of "gonoccoccus [sic]" indicated gonorrhea. The swollen vaginal area

was possibly due to the gonorrhea or a penis, hand or other blunt injury. The minor might have been sexually abused. The hymen was not broken. At the time of the injury, he believed the sticky discharge could only have come from a penis. Due to its location and the injury, it did not come from the victim. He added that the victim could have contracted gonorrhea from earlier contact or a penis discharge lying in that area. He admitted the infection could have occurred due to a recent discharge on a bed sheet, which was sat on in such a way as to cause contact with the vagina, rectal area or mouth where there was a skin wound.

On redirect examination, Dr. Arya asserted that the bruise on both sides of the victim's vulva area was consistent with some acute injury in that area; the abuse of which the victim complained was consistent with his observations; and the sticky substance came from someone who had gonorrhea. He indicated it could have been passed by someone ejaculating on the pelvic area. He swabbed the pelvic area outside of the vagina for semen and the culture.

Ronald Rose, a technician in the transmission and cure of sexually transmitted diseases employed by Cermak Health Services at Cook County jail, stated that on July 9 he examined defendant's culture and found that it tested positive for gonorrhea.

Detective Bell testified to substantially the same sequence of events as he did at the pretrial hearing.

Defendant's motion for a directed finding at the close of the State's case in chief was denied.

Defendant testified on his own behalf. Defendant denied sexually assaulting the victim. He was living at the victim's home intermittently. For two to three weeks prior to the incident, he had occasionally stayed the night. On the evening of the incident he had sexual intercourse with the mother between 10 and 10:30 p.m., after which he went to a friend's house and spent the night. Defendant returned between 7:30 and 7:45 a.m., and was let in by the mother, as he did not have his own key. They went upstairs. The mother went downstairs to answer the door and returned, indicating someone was abusing her daughter. Defendant got out of bed and approached the victim's bedroom. He asked her if "someone messed with her." She did not respond. The mother left and called the police from a neighbor's house. The police arrived and arrested defendant.

On cross-examination, defendant acknowledged that he had a burning sensation around his penis for two or three weeks. He experienced a white discharge from his penis for about three weeks prior to the incident, which he contracted from the victim's mother. He re-

membered someone taking a swab from his penis, making a culture plate and receiving treatment, but not being told he tested positive.

The defense rested. In rebuttal, the State submitted two certified copies of defendant's convictions, which were received in evidence. The first conviction was for burglary and the second was for armed robbery.

As previously mentioned, the jury found defendant guilty of committing aggravated criminal sexual assault on July 7, 1988, and he was sentenced as noted.

I

Defendant initially urges that the evidence was so improbable that it creates reasonable doubt as to defendant's conviction.

It is asserted that the conviction was improperly based upon an unreliable hearsay statement, namely, defendant stuck or put "his thing in my t.t." Also, because the hymen was not torn, there were no semen or spermatozoa on the vaginal and pelvic specimens, the redness and tenderness could have come from the venereal disease, the disease could have been contracted from another source, and the minor's statements were coaxed and not spontaneous, defendant asserts that there was insufficient proof of any crime committed.

■ Section 115—10 contains a hearsay exception which permits admission of testimony relating to an out-of-court statement made by a child under the age of 13 in a prosecution for a sexual act perpetrated upon the child. Such testimony may be admitted after a hearing is conducted outside the presence of the jury. The court must determine whether the time, content and circumstances of the statement provide sufficient safeguards of reliability. (Ill. Rev. Stat. 1989, ch. 38, par. 115—10; *Ohio v. Roberts* (1980), 448 U.S. 56, 66, 65 L. Ed. 2d 597, 608, 100 S. Ct. 2531, 2539.) Further, if the child is unavailable as a witness, there must be corroborative evidence of the act which is the subject of the statement, which amounts to a "particularized guarantee of trustworthiness." *People v. Rocha* (1989), 191 Ill. App. 3d 529, 541, 547 N.E.2d 1335. See *People v. Denning* (1991), 219 Ill. App. 3d 428, 434, 579 N.E.2d 943.

In the present case, the mother and both police officers testified to the victim's out-of-court statements at the pretrial hearing, after which the circuit court determined that they were reliable. The court's conclusions as to reliability were consistent with the criteria set forth by the United States Supreme Court in *Idaho v. Wright* (1990), 497 U.S. 805, 821-22, 111 L. Ed. 2d 638, 656, 110 S. Ct. 3139, 3150. First, the victim's statements were spontaneous and consist-

ently repeated. The first time she informed her mother was within 30 seconds after waking. Second, as to the minor's mental state, there is no evidence that the minor was in a mind-set that impacted upon her communication abilities. Third, the terminology used was not unexpected. "Thing" and "t.t." are expected utterances from a five-year-old child. Her description, however, of intercourse is unexpected and indicates she was assaulted or had observed the act. Finally, there was no motive to fabricate, the fourth factor.

The court's determination of reliability was further supported by requiring counsel to address significant factors relevant to determine whether the time, content and circumstances of a child's out-of-court statement provide sufficient safeguards of reliability. Several of these factors are substantially similar to those in *Wright* (497 U.S. at 821-22, 111 L. Ed. 2d at 656, 110 S. Ct. at 3150). Additional factors include the child's physical condition; the nature and duration of the sexual act; the relationship of the child and the accused; reaffirmance or recantation; whether the child is likely, apart from the incident, to have sufficient knowledge of sexual matters to realize the act is possible and sexually gratifying to some; whether the language is embarrassing and, therefore, only spoken if true; and whether it was a cry for help. M. Graham, Cleary & Graham's Handbook of Illinois Evidence §803.23, at 188-89 (4th ed. Supp. 1989).

■■ In this case, by virtue of the circuit court's earlier ruling, the minor was unavailable to testify (*People v. Hart* (1991), 214 Ill. App. 3d 512, 525, 573 N.E.2d 1288); therefore, corroborative evidence of the act was required. (*Rocha*, 191 Ill. App. 3d at 539.) We find such corroboration existed. Semen stains were found on the underwear and pants defendant was wearing upon arrest. The victim's vaginal area was swollen, tender and covered with a sticky discharge. The discharge came from someone who had contracted gonorrhea; defendant tested positive for gonorrhea. The bruise on her vulva area was consistent with acute injury, and Dr. Arya's observations were consistent with the victim's complaint. The cumulative effect of these facts supports the circuit court's conclusion that there was sufficient corroboration of the sexual assault. (*Hart*, 214 Ill. App. 3d at 521.) The victim's statements to others were properly admitted in accordance with section 115—10. *Rocha*, 191 Ill. App. 3d at 539.

Although there was no semen found in the victim's pelvic or vaginal specimens, the presence of semen is not required to prove that a sex crime was committed. (*People v. Allman* (1989), 180 Ill. App. 3d 396, 402, 535 N.E.2d 1097.) Additionally, defendant's reliance on *People v. Lambert* (1984), 104 Ill. 2d 375, 472 N.E.2d 427, and *People v.*

*Zwart* (1990), 208 Ill. App. 3d 407, 567 N.E.2d 373, is misplaced. *Lambert* involves the corroboration of a confession and the lack of evidence to prove a relationship between the victim's condition and the commission of the crime. In this case, substantial evidence exists to prove the relationship. In *Zwart*, the court found the hearsay statements unreliable because of a lapse in time before the making of the statements, which is not an issue in this case because of the victim's prompt report to her mother.

■ The victim's outcries and the corroborative evidence fulfilled the essential elements of defendant's conviction, aggravated criminal sexual assault (Ill. Rev. Stat. 1987, ch. 38, par. 12–14). Accordingly, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found defendant guilty of aggravated criminal sexual assault beyond a reasonable doubt. (*Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789; *People v. Young* (1989), 128 Ill. 2d 1, 538 N.E.2d 453.) We find no improbability in the evidence which rises to a reasonable doubt of defendant's guilt.

## II

Defendant next asserts that the admission of the minor's reported statements violated his right to confrontation of witnesses under the United States and Illinois Constitutions.

The confrontation clause of the United States Constitution, as applied to the States through the fourteenth amendment (U.S. Const., amend. XIV), provides that "[i]n all criminal prosecutions, the accused shall enjoy the right *** to be confronted with the witnesses against him" (U.S. Const., amend. VI). Substantially the same right is contained in the Illinois Constitution, which endows an accused with the right "to meet the witnesses face to face." Ill. Const. 1970, art. I, §8.

■ The confrontation clause requires the circuit court to make special inquiry into a statement's reliability if the declarant is not subject to cross-examination. (*Ohio v. Roberts* (1980), 448 U.S. 56, 66, 65 L. Ed. 2d 597, 608, 100 S. Ct. 2531, 2539; *People v. Rocha* (1989), 191 Ill. App. 3d 529, 540, 547 N.E.2d 1335.) An accused may challenge whether the declarant was sincerely telling what he believed to be the truth or whether the declarant's intended meaning is adequately conveyed by the language employed. *Roberts*, 448 U.S. at 71, 65 L. Ed. 2d at 611, 100 S. Ct. at 2541.

Section 115–10 comports with these guarantees. It secures the reliability of a hearsay statement by requiring a hearing and corroboration if the declarant is unavailable, thereby mandating that the evi-

dence in each case demonstrate a particularized guarantee of trustworthiness. (*Rocha*, 191 Ill. App. 3d at 541.) The court must find at a hearing conducted outside the presence of the jury that the time, content and circumstances of the statement provide sufficient safeguards of reliability. *Rocha*, 191 Ill. App. 3d at 541.

In the case *sub judice*, the court conducted a proper hearing in compliance with section 115—10 and, therefore, defendant's confrontation rights were not violated.

### III

Denial of a fair and impartial trial by way of the State's closing comments is the basis for defendant's next point of error.

Defendant waived this issue by failing to object to most of the comments and by omitting them from his post-trial motion (*People v. Morgan* (1991), 142 Ill. 2d 410, 445, 568 N.E.2d 755). Even were we to consider them on their merits, the remarks did not constitute reversible error.

■ Considerable latitude is allowed in making closing and rebuttal argument. (*People v. Thompkins* (1988), 121 Ill. 2d 401, 445-46, 521 N.E.2d 38.) The circuit court's ruling in this regard generally will be upheld absent clear abuse of discretion. (*People v. Cisewski* (1987), 118 Ill. 2d 163, 175, 514 N.E.2d 970.) Here, several of the remarks properly were comments on the evidence and legitimate inferences therefrom (*People v. Harris* (1989), 187 Ill. App. 3d 832, 842, 543 N.E.2d 859). Some were responses to defense counsel's argument (*People v. Morando* (1988), 169 Ill. App. 3d 716, 733, 523 N.E.2d 1061). Others were mere overstatements of the evidence (*People v. Enoch* (1989), 189 Ill. App. 3d 535, 551, 545 N.E.2d 429). Furthermore, remarks regarding defendant's prior convictions were permissible, for they related to defendant's credibility (*People v. Stiff* (1989), 185 Ill. App. 3d 751, 757, 542 N.E.2d 392), as the jury was instructed (*People v. McKinney* (1983), 117 Ill. App. 3d 591, 597, 453 N.E.2d 926). These comments did not constitute reversible error.

Additionally, any error was cured and harmless. The court sustained several objections (*Cisewski*, 118 Ill. 2d at 178), and instructed the jury that closing argument is not evidence. (*People v. Barney* (1982), 111 Ill. App. 3d 669, 677-78, 444 N.E.2d 518.) The evidence was substantially against defendant, and the remarks were not a factor in his conviction, nor did they result in substantial prejudice to him or affect the verdict (*Harris*, 187 Ill. App. 3d at 842-43). In sum, the State's closing argument did not constitute reversible error.

IV

■ Defendant lastly asserts that his 30-year sentence is excessive because he did not cause permanent harm to the victim and did not hold a position of trust, a factor in aggravation. Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—3.2.

The circuit court addressed the former argument, observing that the transmission of a venereal disease to a five-year-old child caused her "serious physical harm," while noting, in mitigation, that she was treated with no evident residual effect. In applying the position of trust factor in aggravation, the court appropriately reasoned that the mother let defendant into her home and near the children, expecting that he would act in "the proper way." The imposition of a longer sentence to deter sexual abuse in the household is proper. (*People v. Reid* (1987), 160 Ill. App. 3d 491, 493, 513 N.E.2d 517.) A sentence will not be altered upon review absent an abuse of discretion, which we do not find here. The sentence, as that entered in this case, should be based upon the unique circumstances of each case. *People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882.

Aggravated criminal sexual assault is a Class X felony carrying a sentence of 6 to 30 years' imprisonment. Defendant, however, was eligible for a 60-year sentence due to a prior conviction. (Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—3.2; Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—2.) The circuit court weighed all aggravating and mitigating factors and recognized that defendant was subject to this extended term, but did not impose it. Defendant was amenable to a sentence of 30 years in prison, the maximum for a Class X felony without an extended term. The circuit court did not abuse its discretion by imposing this sentence for aggravated criminal sexual assault of a five-year-old child.

For the aforesaid reasons, we affirm defendant's conviction and sentence.

Affirmed.

DiVITO and McCORMICK, JJ., concur.