# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Jackson*, 2012 IL App (1st) 100398

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TARUE JACKSON, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-10-0398 |
| Filed | February 7, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's convictions for aggravated criminal sexual assault and criminal sexual abuse based on offenses he committed when he was 15 years of age were upheld over his contentions that certain evidentiary rulings resulted in an unfair trial, that the evidence was insufficient to establish his guilt beyond a reasonable doubt, and that the automatic transfer provision of the Juvenile Court Act allowing the transfer of a juvenile aged 15 or over charged with certain Class X felonies to be prosecuted as an adult in criminal court violated his due process rights, constituted cruel and unusual punishment and violated the proportionate penalties clause of the Illinois Constitution. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 07-CR-1061; the Hon. Lawrence Edward Flood, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Michael J. Pelletier, Karen Munoz, and Duane E. Schuster, all of State Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Joan F. Frazier, Mary L. Boland, and Joseph A. Alexander, Assistant State's Attorneys, of counsel), for the People.

Panel

PRESIDING JUSTICE QUINN delivered the judgment of the court, with opinion.

Justices Connors and Harris concurred in the judgment and opinion.

## OPINION

¶ 1     This criminal appeal, in part, challenges the constitutionality of section 5-130 of the Illinois Juvenile Court Act of 1987 (705 ILCS 405/5-130(1)(a) (West 2010)), which procedurally provides for an automatic transfer of a juvenile age 15 or over to criminal court to be prosecuted as an adult when charged with certain Class X felonies. Specifically, defendant argues that the automatic transfer provision: (1) violates his due process rights; (2) constitutes cruel and unusual punishment; and (3) violates the proportionality clause of our state constitution. For the reasons stated herein, we find defendant's constitutional challenges to the automatic transfer provision of the Illinois Juvenile Court Act to be without merit.

¶ 2     This appeal also challenges certain evidentiary rulings as creating an unfair trial and the sufficiency of the evidence to support the jury's verdict of guilty beyond a reasonable doubt. We reject these challenges.

¶ 3                             BACKGROUND

¶ 4     The trial evidence established that the victim began visiting her paternal grandmother's home when she was four years old. The victim's grandmother lived with the defendant, the victim's "Uncle Buckie." The victim testified that every time she visited her grandmother's house, the defendant would come into bed with her and put his "thing" in her "front" and butt and put his finger in her "front" and butt. When she was five years old, defendant slapped her on her cheek while in bed and as he performed these sex acts on her. The victim's mother testified that the victim visited her paternal grandmother every other weekend from December 2005 to March 2007, when she stopped the visits after noticing a handprint on her daughter's cheek when she picked her up. It was then that her daughter related the stories of sexual assault. The emergency room (ER) nurse, Elizabeth Schoefeld, testified that the victim described the sexual assault by defendant and also told her the defendant smacked her on the cheek. The ER physician, Dr. Colbert, had examined the victim and testified that "without any question or reservation, this [referring to his physical findings] is by definition sexual

-2-

abuse." The defendant's expert social worker, Susan Robbins, testified that in her opinion the investigation was geared "to validate what the child said" and that "it appears that every person who saw this child was looking to confirm what she said rather than to investigate what may have happened, if anything," even though there was no evidence of the mother claiming abuse but the child denying it, no evidence that the mother was "doctor shopping," and no evidence of the child repeatedly denying any abuse until placed in a situation where she would eventually cry out. In fact, there was no instance in the written record of the investigation where the victim ever denied being sexually assaulted. The defense's evidence consisted primarily of alibi witnesses who testified that the defendant was not staying at his home on the weekends the victim came to visit which contradicted the victim's mother and her friend's testimony that he was present. The jury found the defendant guilty of two counts of aggravated criminal sexual assault and one count of criminal sexual abuse and acquitted the defendant on two other counts of criminal sexual assault and one other count of criminal sexual abuse.

¶ 5                    I. DEFENDANT'S CONSTITUTIONAL CHALLENGES
                              TO AUTOMATIC TRANSFER

¶ 6        The defendant, Tarue Jackson was born on December 19, 1991. On May 14, 2007, he was 15 years old and was charged with several counts of aggravated criminal sexual assault (720 ILCS 5/12-14(b) (West 2006)) and one count of aggravated criminal sexual abuse (720 ILCS 5/12-16(c)(2) (West 2006)). Pursuant to the automatic transfer provision of the Illinois Juvenile Court Act of 1987 (705 ILCS 405/5-130 *et seq.* (West 2006)), defendant's case proceeded in criminal court because he was statutorily excluded from the jurisdiction of juvenile court because he was at least 15 years old and was accused of aggravated criminal sexual assault. A jury found the defendant guilty of two counts of aggravated criminal sexual assault and one count of criminal sexual abuse on April 28, 2009. On September 24, 2009, the trial court sentenced defendant to seven years in prison for each count of aggravated criminal sexual assault and four years for the one count of aggravated criminal sexual abuse. The sentence imposed for each count was one year more than the minimum amount of incarceration defendant could receive for his convictions. 730 ILCS 5/5-8-1(a)(3), (a)(5) (West 2006). Defendant appeals and argues that the automatic transfer provision is unconstitutional. Defendant acknowledges that the Illinois Supreme Court has previously found the automatic transfer provision to be constitutional (*People v. J.S.*, 103 Ill. 2d 395 (1984); *People v. M.A.*, 124 Ill. 2d 135 (1988); *People v. Miller*, 202 Ill. 2d 328 (2002)), but argues that the legal landscape has been altered enough by two United States Supreme Court cases to warrant a fresh look citing *Roper v. Simmons*, 543 U.S. 551 (2005), and *Graham v. Florida*, 560 U.S. ___, 130 S. Ct. 2011 (2010). We address each of defendant's three constitutional challenges, *seriatum*.

¶ 7                             A. Standard of Review

¶ 8        The constitutionality of any statute is a matter of law which is subject to *de novo* review on appeal. *People v. Sharpe*, 216 Ill. 2d 481, 486-87 (2005). This court has "a duty to

construe a statute in a manner that upholds its validity and constitutionality" if it can reasonably be accomplished. *People v. Graves*, 207 Ill. 2d 478, 482 (2003). A statute also carries with it a strong presumption of constitutionality. *People v. Sharpe*, 216 Ill. 2d at 487. The party challenging a statute has the burden of clearly establishing that the statute violates the constitution. *People v. Sharpe*, 216 Ill. 2d at 487. It is against this backdrop that we analyze defendant's constitutional challenges to the automatic transfer provision contained in the Illinois Juvenile Court Act.

¶ 9          B. The United States Supreme Court Cases of *Roper* and *Graham*

¶ 10     The first United States Supreme Court case cited by defendant in support of his three constitutional arguments is *Roper v. Simmons*, 543 U.S. 551 (2005). In *Roper*, the defendant, a 17-year-old, committed murder. He did not fall within the jurisdiction of Missouri's juvenile court system. He was tried and convicted as an adult and sentenced to death. The issue before the Court was whether the 17-year-old's death penalty sentence violated the eighth amendment's prohibition of cruel and unusual punishment. The Supreme Court, by a vote of 5 to 4, held that the eighth and fourteenth amendments prohibit a sentence of death on defendants who were under the age of 18 at the time of the commission of their crime. *Roper v. Simmons*, 543 U.S. at 578.

¶ 11     The second United States Supreme Court case relied on by defendant is *Graham v. Florida*, 560 U.S. ___, 130 S. Ct. 2011 (2010). Defendant Graham was 16 years old when he was involved in an attempted robbery. Pursuant to Florida's automatic transfer provision, he was charged as an adult, and he pled guilty to armed burglary with assault and battery and attempted armed robbery. He was initially sentenced to concurrent three-year terms of probation, but when he violated his probation by committing a home-invasion robbery, possessing a firearm, associating with others engaged in criminal activity and attempting to avoid arrest, the court revoked his probation and sentenced Graham to what, in effect, was life in prison without parole. The Supreme Court held that the Constitution's eighth amendment does not permit a sentence of life without parole for a juvenile criminal who does not commit a homicide. *Graham v. Florida*, 560 U.S. at ___, 130 S. Ct. at 2030. The Court's decision contains no holding regarding whether automatic transfer provisions, such as the one in this case, are a violation of any constitutional rights. It merely took note of Florida's automatic transfer provision (*Graham v. Florida*, 560 U.S. at ___, 130 S. Ct. at 2030-31), which, like the instant case, procedurally landed defendant in criminal court. The *Graham* Court ruled that it is unconstitutional to impose a sentence of life without parole for a juvenile who did not commit a homicide.

¶ 12               C. Defendant's Due Process Challenge

¶ 13     Without specifically identifying whether defendant is claiming the automatic transfer provision in the Illinois Juvenile Court Act violates substantive or procedural due process, defendant claims generally that he was deprived of life, liberty or property without due process of law, citing the fourteenth amendment to the United States Constitution. U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2. In *People v. Salas*, the First Division of this

court recently held that the automatic transfer provision of the Illinois Juvenile Court Act did not deprive a defendant due process rights. *People v. Salas*, 2011 IL App (1st) 091880. We agree. We also analyze defendant's arguments to determine if the statute violates the constitutional guarantee that a person may not be deprived of liberty without due process of law (substantive due process) or whether the procedural mechanisms employed in the statute require that defendant be given the opportunity to be heard in both a meaningful time and manner (procedural due process).

¶ 14 Almost 18 years ago, the Illinois Supreme Court addressed the issue of whether the automatic transfer provision contained in the Illinois Juvenile Court Act violates the constitutional guarantee of substantive due process that provides that the accused may not be deprived of liberty without due process of law in the case of *People v. J.S.*, 103 Ill. 2d 395 (1984). The supreme court applied the "rational basis" test as the appropriate method to evaluate whether the automatic transfer provision comported with the defendant's substantive due process guarantee. *People v. J.S.*, 103 Ill. 2d at 402-03. Under the "rational basis" test, a statutory provision passes constitutional challenge if it is rationally related to a legitimate state interest. *People v. J.S.*, 103 Ill. 2d at 403. In *J.S.*, our supreme court held that because the automatic transfer provision included only the more heinous Class X felonies of murder, rape, deviate sexual assault and armed robbery with a firearm and limited its application to 15- and 16-year-old defendants, it was a rational classification because it was "rationally based on the age of the offender and the threat posed by the offense to the victim and the community because of its violent nature and frequency of commission." *People v. J.S.*, 103 Ill. 2d at 404. The court held that the automatic transfer provision does not violate any due process requirements because it is reasonably drafted to remedy the evils that society has determined to be a threat to public health, safety and welfare due to the violent nature of the crimes.

¶ 15 Defendant believes that the United States Supreme Court holdings in both *Roper* and *Graham*, *supra,* demand a different result because it is no longer rational to automatically transfer 15- and 16-year-olds to adult court when there is no legitimate penological justification for an adult sentence. Those four penological justifications are: (1) deterrence, (2) retribution, (3) incapacitation, and (4) rehabilitation. See *Graham*, 560 U.S. at ___, 130 S. Ct. at 2028-30. Defendant submits that those four justifications should be used by a decision-maker to determine whether it is both necessary and appropriate to transfer the 15- or 16-year-old criminal offender to adult court rather than do so automatically and not wait until after a conviction when the court is fashioning an appropriate sentence. In other words, defendant submits that it is no longer rational to automatically transfer 15- and 16-year-old offenders to adult court without some hearing where the four possible justifications are litigated as applied to the defendant.

¶ 16 Both *Roper* and *Graham* decided constitutional challenges made to sentencing statutes: whether the death penalty and natural life in prison without parole for juveniles constituted cruel and unusual punishment under the eighth amendment. No due process arguments were raised or addressed in either *Roper* or *Graham*. In the instant case, we are concerned not only with a non-sentencing statute but a challenge made under the due process clause. Therefore, defendant's argument is without merit as *People v. J.S.* remains on solid footing with the

Supreme Court's holdings in *Roper* and *Graham*. Defendant's substantive due process rights were not violated when he was automatically transferred to adult court pursuant to the automatic transfer provision of the Illinois Juvenile Court Act of 1987 (705 ILCS 405/5-130 (West 2006)).

¶ 17    Procedural due process deals with the specific procedures that are employed in a statute and requires an analysis of whether defendant is given a meaningful opportunity to be heard. *People v. P.H.*, 145 Ill. 2d 209 (1991). Although defendant does not characterize it as such, it appears that because he argues that he is entitled to be heard regarding whether his transfer to adult court is necessary and appropriate, he was not afforded procedural due process. Again in *People v. J.S.*, the Illinois Supreme Court considered this identical procedural due process argument as it applied to the automatic transfer provision of the Illinois Juvenile Court Act and held that the provision did not violate any procedural due process rights. The court held that the automatic transfer provision "does not leave room for disparity in treatment between individuals within its proscription. All 15- and 16-year-olds who have committed the enumerated offenses, which we have held were not arbitrarily or unreasonably selected by the legislature, are to be prosecuted in the adult criminal court system. There is no discretionary decision to be made by the juvenile court, and therefore we do not believe that the holding in [the United States Supreme Court case ] *Kent* is dispositive." *People v. J.S.*, 103 Ill. 2d at 405 (citing *Kent v. United States*, 383 U.S. 541 (1966)). The *J.S.* court held that the automatic transfer provision of the Illinois Juvenile Court Act does not leave any room for disparity in treatment of anyone identified within its language. The provision requires that anyone who is 15 or 16 years of age at the time of the commission of one of the listed criminal acts be prosecuted within the adult criminal court system. *People v. J.S.*, 103 Ill. 2d at 405. Therefore, defendant's argument is without merit.

¶ 18              D. Defendant's Proportionate Penalties' Clause Challenge

¶ 19    Defendant submits that the automatic transfer provision of the Illinois Juvenile Court Act violates the proportionate penalties clause of our state constitution. Again, in *People v. Salas*, 2011 IL App (1st) 091880, the First Division of this court recently held that it does not. We agree. The proportionate penalties clause states that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. This clause specifically deals with penalties. In this case, we are dealing with the automatic transfer provision, which occurs well before a trial, not at a time of rendering guilt and imposition of penalty. Defendant is not challenging the penalty meted out to him after his conviction. He is challenging the procedure (automatic transfer provision) that exposed him to the range of possible penalties for adults in criminal court. The automatic transfer provision imposes no penalty or punishment. Our supreme court has held that the "proportionate penalties clause is coextensive with the cruel and unusual punishment clause. [Citations.] Both clauses apply only to the criminal process–that is, to direct actions by the government to inflict punishment." *In re Rodney H.*, 223 Ill. 2d 510, 518 (2006). Although *Rodney H.* dealt with provisions of the Illinois Juvenile Court Act and the Children and Family Services Act (20 ILCS 505/5(*l*) (West 2004)) that allowed a court to place a ward in the guardianship of the

Department of Children and Family Services if the delinquent minor was under 13 years of age, the rationale and resulting principle surrounding the proportionate penalties challenge remains equally applicable here. Because the automatic transfer provision of the Illinois Juvenile Court Act imposes neither a penalty nor punishment, the proportionate penalty clause of the Illinois Constitution is inapplicable. For the same reasons, the two United States Supreme Court cases of *Roper* and *Graham,* dealing with only eighth amendment holdings on punishment imposed, are unhelpful to defendant, who is making a proportionate penalties challenge.

¶ 20　　The defendant argues that because the automatic transfer provision exposed him to the possibility of a mandatory consecutive sentence of up to 30 years on each of the two counts of aggravated criminal sexual assault, even though he received only 7 years per count, this possibility, even though it was never realized, violated the Illinois constitutional requirement of proportionality in sentencing, citing *People v. Miller*, 202 Ill. 2d 328 (2002). The *Miller* case involved a 15-year-old who was convicted of two counts of murder when he acted as a lookout. *Miller*, 202 Ill. 2d at 330-31. The trial court refused to impose a mandatory natural life sentence which was statutorily applicable to these facts and found that such a punishment, if imposed on the defendant, would violate the proportionate penalties clause. *Miller*, 202 Ill. 2d at 330. Instead, the trial court gave the defendant 50 years in prison.

¶ 21　　The *Miller* court affirmed, reasoning that the mandatory life sentence "grossly distorts the factual realities of the case and does not accurately represent defendant's personal culpability such that it shocks the moral sense of the community. This moral sense is particularly true *** where a 15-year-old with one minute to contemplate his decision to participate in the incident and stood as a lookout during the shooting, but never handled a gun, is subject to life imprisonment with no possibility of parole–the same sentence applicable to the actual shooter." *Miller*, 202 Ill. 2d at 341. The supreme court held that the multiple-murder sentencing statute as it would apply to a defendant in this particular factual scenario violated the proportionate penalties clause. *Miller*, 202 Ill. 2d at 343. This was a very limited holding where the combination of the automatic transfer provision, the accountability statute and the multiple-murder sentencing statute would result in a mandatory life sentence without the possibility of parole for a 15-year-old who acted as a lookout. In the instant case, defendant Tarue Jackson was the actual perpetrator of the aggravated criminal sexual assault. He was not convicted because he acted as a lookout while someone else committed the crime or on some other theory of accountability. Upon conviction, defendant was not immediately subjected to a mandatory sentence of life in prison without possibility of parole. The trial court was not prevented from weighing the facts of the case as well as all evidence submitted on the topics of both aggravation and mitigation. Therefore, *Miller* is inapplicable to this case and does not cause us to conclude that the automatic transfer provision, which caused the defendant to be tried as an adult, is in violation of the proportionate penalties clause and, therefore, unconstitutional.

¶ 22　　　　　E. Defendant's Cruel and Unusual Punishment Challenge

¶ 23　　The eighth amendment provides as follows: "Excessive bail shall not be required, nor

excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const., amend. VIII. Defendant was given a punishment of seven years for each of the two counts of aggravated criminal sexual assault and four years for aggravated criminal sexual abuse for which he was convicted. He does not complain of these sentences directly. His argument is that the automatic transfer provision violates the eighth amendment because it mandates that all 15- and 16-year-olds who are charged with certain grievous offenses be transferred to adult criminal court. The defendant argues that the rulings in both *Roper* and *Graham* call for reconsideration of the constitutionality of automatic transfer provisions. In other words, defendant submits that it is cruel and unusual punishment for the legislature to mandate that any 15-year-old juvenile be automatically subjected to adult criminal court proceedings because there may be some possibility that the ultimate punishment he or she receives if found guilty may be disproportionate to his or her criminal involvement. The defendant argues that none of the legitimate penological goals of retribution, deterrence, incapacitation and rehabilitation are served by transferring a 15-year-old juvenile automatically to adult criminal court. This court has already addressed whether the automatic transfer provision constitutes cruel and unusual punishment. *People v. Salas*, 2011 IL App (1st) 091880. We agree with its finding that it does not for the following reasons.

¶ 24     The automatic transfer provision is not a penalty provision in even the broadest sense. It merely dictates for a small class of older juvenile defendants who are charged with the commission of certain heinous crimes where their cases are to be tried. Guilt has not been determined at this stage, let alone what punishment, if any, should be imposed. The automatic transfer provision does not dictate any form of punishment as that term is used throughout criminal statutes. Because the automatic transfer provision does not mandate or even suggest a punishment, any analysis as to whether or not it violated the eighth amendment's proscription against cruel and unusual punishment is futile. The automatic transfer provision does not impose any punishment. Therefore, it is not subject to the eighth amendment. We find no violation of the cruel and unusual punishment clause.

¶ 25           III. DEFENDANT'S COMPLAINTS OF TRIAL COURT'S
                        EVIDENTIARY RULINGS

¶ 26     Two of defendant's remaining appellate issues claim that certain evidentiary rulings by the trial court deprived him of his right to present a defense.

¶ 27                        A. Standard of Review

¶ 28     Whether or not evidence is admitted during a criminal trial is within the sound discretion of the trial court. Such rulings are not reversed unless there is a clear showing of abuse of discretion by the trial court. *People v. Tenney*, 205 Ill. 2d 411, 436 (2002). Our supreme court has stated that " '[a]buse of discretion' is the most deferential standard of review–next to no review at all–and is therefore traditionally reserved for decisions made by a trial judge in overseeing his or her courtroom or in maintaining the progress of a trial." *In re D.T.*, 212 Ill. 2d 347, 356 (2004). The only time an abuse of discretion is found is when the trial court's ruling is "arbitrary, fanciful or unreasonable" or when "no reasonable [person] would take

the view adopted by the trial court." (Internal quotation marks omitted. ) *People v. Donoho*, 204 Ill. 2d 159, 182 (2003).

¶ 29                    B. Attempted Defenses and Our Analysis

¶ 30    Defendant attempted to defend himself against the aggravated sexual assault and abuse charges by theorizing that the victim's mother had a motive to lie about what happened to her daughter. Defendant's brother was the victim's father. The victim's mother listed another man as the victim's father on the victim's birth certificate. Defendant surmised that the other man sought a paternity test at the urging of defendant's brother and that test determined that the defendant's brother was the victim's real biological father. The defendant theorizes that because of the new proof of paternity, the relationship between the victim's mother and the other man ended, angering the victim's mother and causing her to bar the victim from any contact with defendant's brother (her father) or his family until the paternal grandmother was able to work out a friendly relationship so the defendant's brother's family could see the victim.

¶ 31    We fail to see how the trial court inhibited this defense. The trial court allowed the defendant to present evidence of bias and motive directly from the victim's mother when it ruled on the issue, as follows: "I think that that's relevant on cross-examination to the issue of bias or prejudice, and I think it is an appropriate area of cross-examination. It's certainly not a collateral issue as far as impeachment is concerned. So I think it is appropriate to go into." Following this ruling, defense counsel did not use the issue of paternity to explore the victim's mother's possible bias or motives during cross-examination. Defendant is entitled to an opportunity to prevent his version of events within the confines of our rules of evidence (*Washington v. Texas*, 388 U.S. 14, 19 (1967)), and with the above ruling by the trial court, defendant was given that opportunity. Instead, defendant now claims that he was prevented from pursuing this theory of bias and bad motive when the trial court prohibited any direct examination of the defendant's mother on this theory as it would constitute inadmissible hearsay. All knowledge that this witness possessed was indirect as it was based on conversations she had with the victim's mother and others. Defendant, in pursuing a defense, has no right to violate the rules of evidence. *People v. Smith*, 152 Ill. 2d 229, 266 (1992). We hold that both trial court rulings surrounding defendant's desire to pursue a theory of bias or bad motive by the victim's mother were correct and defendant was not prevented from pursuing this theory within the well-established rules of admissible testimony.

¶ 32    Next, defendant complains that he was denied his right to present a complete defense when it ruled that defendant's hired expert: (1) would not be allowed to interview the victim; (2) would not be allowed to sit at defense counsel's table during the presentation of the State's case; and (3) would not be allowed to comment on the victim's credibility.

¶ 33    These three claimed errors by the trial court are disposed of by well-settled, long-standing case law. The defendant's right to a fair trial does not include an order by the trial court to compel a victim to speak with defense counsel or his hired experts. *People v. Peter*, 55 Ill. 2d 443 (1973). The trial court took note of the fact that defendant could not cite any case precedent "where a child victim of a criminal sexual assault or abuse case has ever been

required to submit to a pretrial interview or deposition." The trial court did not err in denying defendant's expert access to the victim for a forced interview. The specific request by defendant was for permission to have the victim interviewed by his expert, Susan Robbins, who has a Ph.D. in social work and who was an associate professor for 29 years at the University of Houston College. Dr. Robbins testified that she had never interviewed any children who have been sexually abused nor had she ever worked as an interviewer of children in her professional career. The defendant primarily relies on *People v. Wheeler*, 151 Ill. 2d 298 (1992), as authority for his claim that he was denied a fair trial when the trial court denied his request. However, in *Wheeler*, the court allowed such a victim interview by the defendant's expert because the victim's mental diagnosis of "Rape Trauma Syndrome" bore directly on an essential element of the charge the State was attempting to prove and the State in *Wheeler* intended to offer the testimony of its own expert to support that element of proof at trial. In the instant case, the State did not utilize any expert's psychological evaluation or diagnosis of the victim to prove up any element of the aggravated sexual assault or abuse charges. The trial court was not asked by the defendant to perform an independent psychological evaluation of the victim (which it appears Dr. Robbins was not qualified to perform), but asked to approve some nebulous interview by a professor who had never conducted an interview of an underage sex abuse victim before. The defendant had not presented sufficient, compelling reasons to the court for his request, especially since the mental state of the victim did not bear directly on an essential element of the charges. We hold that the trial court did not err in denying the defendant's request for a private interview of the victim conducted by defendant's hired expert, Dr. Robbins, especially since the State decided to forgo calling at trial any professionals who interviewed the child victim from the Children's Advocacy Center.

¶ 34　　Defendant also claims he was denied a fair trial when the trial court denied his request to allow defendant's expert, Dr. Robbins, to sit at counsel's table to observe the State's entire case-in-chief. The trial court previously allowed a mutual motion to exclude all witnesses from the courtroom so as to preclude a witness from shaping his or her testimony to conform to others' testimony that had already occurred during trial. This is a trial procedure that is routinely followed. *People v. Johnson*, 47 Ill. App. 3d 362, 369 (1977). Defendant provides no reasonable basis to make an exception for Dr. Robbins and allow her to not only observe the entire case, but to do so from counsel's table. We see no abuse of discretion by the trial court in following this time-honored practice of excluding witnesses from observing the trial before they testified. To allow the procedure defendant requested would have had the grave potential of not only creating an unfair advantage for one side's expert witness prior to her testimony but of unfairly elevating the importance of this witness's testimony in the eyes of jurors over that of other witnesses as she sat in a place usually reserved solely for counsel and the defendant.

¶ 35　　Next, the defendant complains that he was denied a fair trial when the trial court prohibited the defendant's hired expert, Dr. Robbins, from commenting on the credibility of the child victim during her testimony. Our supreme court recently reaffirmed its previous holding that it is improper for any witness to comment on the credibility of another witness's testimony. *People v. Becker*, 239 Ill. 2d 215, 236 (2010). Determination of the credibility of

any witness's testimony is solely within the province of the trier of fact. *People v. Becker*, 239 Ill. 2d at 236. When the trial court did not allow Dr. Robbins to opine about what a typical girl of the victim's age would and would not be able to remember, the trial court was correct in not allowing such testimony as it would constitute adverse comments about the credibility of the victim. *People v. Becker*, 239 Ill. 2d at 236. Defendant cites *People v. Cardamone*, 381 Ill. App. 3d 462 (2008), in support of his argument that the trial court should have allowed his expert to so comment. However, in *Cardamone*, the defendant's expert testimony was excluded in its entirety. Here, Dr. Robbins was allowed to testify about her professional opinions regarding the investigation, but could not comment on the credibility of the victim, as that was for the jury to decide using its common sense and intelligence. Additionally, in *Cardamone*, there was no physical evidence, so the court held that the excluded expert testimony that was proposed regarding complex psychological concepts was beyond the experience of the average juror and possibly could have been helpful to the jury in deliberating the defendant's case. *People v. Cardamone*, 381 Ill. App. 3d at 506. An evaluation and determination of a witness's credibility are not beyond any jury's experience; rather, that is one of its primary functions. *People v. Gilliam*, 172 Ill. 2d 484, 513 (1996).

¶ 36                     IV. DEFENDANT'S CLAIM THAT THE STATE DID NOT
                                            PROVE ITS CASE

¶ 37       Defendant makes a claim that there was insufficient proof for any jury to find him guilty beyond a reasonable doubt.

¶ 38                                      A. Standard of Review

¶ 39       This court reviews a defendant's claim to the sufficiency of the criminal trial evidence in a light most favorable to the prosecution. *People v. Wheeler*, 226 Ill. 2d 92, 114 (2007). In other words, "the reviewing court must allow all reasonable inferences from the record in favor of the prosecution." *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004). This court must decide whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *People v. Wheeler*, 226 Ill. 2d at 114. This court's function, as a reviewing court, is not to retry the defendant (*People v. Rodriguez*, 408 Ill. App. 3d 782, 792 (2011) (citing *People v. Evans*, 209 Ill. 2d 194, 209 (2004))), but to determine whether the jury's guilty verdict is so unreasonable or improbable that it justifies a finding of reasonable doubt of defendant's guilt and, therefore, reversal of the verdict. *People v. Wheeler*, 226 Ill. 2d at 115.

¶ 40       As previously stated, defendant was convicted of two counts of aggravated criminal sexual assault (720 ILCS 5/12-14(b) (West 2006)) and one count of aggravated criminal sexual abuse (720 720 ILCS 5/12-16(c)(2) (West 2006)). The State proved the elements of the charged crimes as follows: (1) the birth certificates of the defendant and victim, which proved that defendant was under age 17 and his victim was under age 9 at the time of the crime; (2) the defendant committed acts of sexual misconduct and penetration when the victim testified that the defendant placed his "thing" in both her "front" and butt; through

testimony of medical professionals and the victim's mother it was established that the victim used the word "thing" when referring to a man's penis and "front" when referring to her vagina; and (3) the testimony of the treating physician, Dr. Christopher Colbert, which established the physical evidence of abrasions and redness to the victim's vagina and anus and a red handprint on the victim's face, which he testified were consistent with sexual assault and abuse.

¶ 41     Defendant attempted to defend himself by arguing that because no semen was found, he could not have sexually assaulted the victim. Pursuant to Illinois statute, the presence of semen is not a necessary component of proof in a sexual assault case. 720 ILCS 5/12-12(f) (West 2006); *People v. Landis*, 229 Ill. App. 3d 128, 133-34 (1992). Defendant points to the testimony of Dr. Fingearson, who found the victim's hymen intact and no physical evidence of penetration or scarring. However, Dr. Fingearson also testified that it was quite normal for a child sexual assault victim to have an intact hymen because the sexual assault does not necessarily involve a finger or penis going into the vagina up through the hymen. He testified that in 80% to 95% of the cases involving a child who has been sexually assaulted, the victim has a normal examination. He also testified that it is possible for a four- or five-year-old child to be repeatedly sexually assaulted for two years and not have trauma or other medical findings. The jury heard all of this evidence and more, weighed it and found defendant guilty of aggravated criminal sexual assault and aggravated criminal sexual abuse beyond a reasonable doubt. The jury verdict will not be disturbed. Even if we were to substitute our judgment for that of the jury, after reviewing the entire trial record, we agree with the conviction. For all the foregoing reasons, we affirm the defendant's conviction by the jury on all charges.

¶ 42     Affirmed.