(Nos. 59319, 59320, 59556 cons.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. J.S., a Minor, Appellee.—THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. L.W., a Minor, Appellee.—THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. T.F., a Minor, Appellee.

*Opinion filed October 3, 1984.*

396

Neil F. Hartigan, Attorney General, of Springfield, and Richard J. Daley, State's Attorney, of Chicago (Michael E. Shabat and Kevin Sweeney, Assistant State's Attorneys, of counsel), for the People.

James J. Doherty, Public Defender, of Chicago (Alison Edwards and David Eppenstein, Assistant Public Defenders, of counsel), for appellees.

Eileen L. Furey, of Schiff, Hardin & Waite, of Chicago, for *amici curiae* Chicago Law Enforcement Study Group *et al.*

Howard H. Braverman, of Springfield, William G. Schwartz, of Hunter and Schwartz, of Carbondale, and Elizabeth Clarke, of Chicago, for *amicus curiae* Illinois State Bar Association.

William J. Stevens, of Foss, Schuman, Drake, Cohen & Bullard, of Chicago, for *amicus curiae* American Civil

Liberties Union.

JUSTICE CLARK delivered the opinion of the court:

In each of the three cases consolidated in this appeal, the trial judge dismissed the respective indictment or information against the defendant on the grounds that the legislature could not constitutionally provide that 15- and 16-year-old defendants must be prosecuted in the adult criminal courts for the crimes of murder, rape, deviate sexual assault, and armed robbery with a firearm. The statute which is in question is section 2—7(6) of the Juvenile Court Act (Ill. Rev. Stat. 1983, ch. 37, par. 702—7(6)), which provides:

"(a) The definition of delinquent minor under Section 2—2 of this Act shall not apply to any minor who at the time of an offense was at least 15 years of age and who is charged with murder, rape, deviate sexual assault or armed robbery when the armed robbery was committed with a firearm. These charges and all other charges arising out of the same incident shall be prosecuted pursuant to the Criminal Code of 1961, as amended.

(b) If before trial or plea an information or indictment is filed which does not charge an offense specified in paragraph (a) of subsection (6) of this Section, the State's Attorney may proceed on the lesser charge or charges but only in Juvenile Court pursuant to the other provisions of the Juvenile Court Act, unless prior to trial the minor defendant knowingly and with advice of counsel waives, in writing, his right to have the matter proceed in Juvenile Court. If before trial or plea an information or indictment is filed which includes one or more charges specified in paragraph (a) of subsection (6) of this Section and additional charges which are not specified in such paragraph, all of the charges arising out of the same incident shall be prosecuted pursuant to the 'Criminal Code of 1961.'

(c) If after trial or plea the minor is convicted of an offense not covered by paragraph (a) of subsection (6) of

this Section, such conviction shall not invalidate the verdict or the prosecution of the minor under the criminal laws of this State. In sentencing the court shall have available any or all dispositions prescribed for that offense pursuant to Chapter V of the Unified Code of Corrections and Article 5 of the Juvenile Court Act."

Section 2—2 defines a delinquent minor as "any minor who prior to his 17th birthday has violated or attempted to violate, regardless of where the act occurred, any federal or state law or municipal ordinance." Ill. Rev. Stat. 1983, ch. 37, par. 702—2.

The facts which are alleged in the case of J.S., No. 59319, are as follows. According to testimony at the preliminary hearing, J.S. entered a Kentucky Fried Chicken restaurant in Chicago on April 2, 1983. J.S. displayed what appeared to be a handgun and ordered a female cashier to give him all the $20 bills in the cash register. The manager stepped up and gave J.S. all the bills in the register. After a demand by J.S. for more bills the manager emptied out a second register and gave J.S. the money. J.S. obtained $79 from the two registers and then fled from the restaurant with the alleged handgun in his hand. J.S. was arrested and charged by information with one count of armed robbery and one count of armed violence predicated upon armed robbery with a gun. J.S. was less than three months from his 17th birthday at the time of the incident.

The facts which are alleged in the case of L.W., No. 59320, are as follows. On November 22, 1983, L.W. accosted a man waiting at a bus stop and pulled him into a vestibule. L.W. hit the man in the face with his fist, searched him, and removed food stamps from the man's wallet. L.W. also found a small knife in the man's pocket and used it to scratch the man on the chest.

L.W. then ordered the man to perform oral copulation upon him. When L.W. allegedly became dissatisfied with

the way the man was performing the act, he pulled the man's pants off, ordered him to bend over and forced his penis into the man's anus.

Two police officers who were driving by saw what was happening and arrested L.W. He was charged by information with two counts of deviate sexual assault (oral copulation and anal intercourse), and one count each of robbery, unlawful restraint and aggravated battery.

It is unclear from the record how old L.W. was at the time of the incident. On the original arrest report, L.W.'s date of birth is listed as "10 Mar. 61," and on the arrest card of the Chicago police department his birth date is also listed as "10 Mar. 61." In the order for detention in the juvenile facilities, his birth date is listed as "10 Feb. 66." On the "Affidavit of Assets and Liabilities" his date of birth is listed as "2/10/66." The various pleadings that were filed on L.W.'s behalf by the assistant public defender state that L.W. was 16 years of age at the time of the offense for which he was charged. If L.W. was born on March 10, 1961, he would have been 21 years of age at the time of the offense and would have been within the jurisdiction of the adult criminal courts. If L.W. was born on February 10, 1966, he would have been 16 years of age at the time of the offense and within the proscription of section 2—7(6) of the Juvenile Court Act which is at issue in this case. We will, in the interest of judicial economy, assume that the February 10, 1966, date is the proper birth date for L.W. and proceed accordingly with this cause. Also, since the trial judge treated L.W. as a minor, we will rely on his judgment in treating L.W. as a minor.

The facts which are alleged in the case of T.F., No. 59556, are as follows. On October 22, 1983, T.F. placed a handgun to the head of a man and took $37, car keys and a hat from the man. T.F. then fired the gun at the man's head, but missed because the man ducked. T.F.

was arrested six days later for an unrelated offense and was charged with the armed robbery of the man.

T.F. was charged by an indictment with one count of armed robbery, two counts of armed violence, one of which was predicated upon armed robbery with a gun, attempted murder, and unlawful restraint. At the time of the incident, T.F. was within seven months of his 17th birthday.

In each of the cases on appeal, the trial court held section 2—7(6) unconstitutional and the State appealed directly to this court pursuant to our Rule 603 (87 Ill. 2d R. 603). The American Civil Liberties Union, Illinois Division, the Chicago Law Enforcement Study Group and the John Howard Association jointly, and the Illinois State Bar Association were all given leave to file briefs *amicus curiae* on behalf of the defendants.

The State only raises one issue on appeal: whether the trial courts erred in holding that section 2—7(6) is unconstitutional.

The parties agree that the legislature has the authority to define the limits of juvenile court jurisdiction. Where the dispute between the parties arises is in regard to the classification contained in section 2—7(6). The State asserts that the legislature has drawn a rational distinction between offenders based on their age and the seriousness of the offenses with which they are charged. The defendants assert that the distinction which is drawn in section 2—7(6) is arbitrary and discriminatory and that it deprives them of procedural and substantive due process and equal protection of the laws.

The legislature created the juvenile court system. Nowhere in the Federal or in this State's constitution is there found the right to be treated as a juvenile for jurisdictional purposes. The Juvenile Court Act (Ill. Rev. Stat. 1983, ch. 701—1 *et seq.*) was enacted so as to apply to those persons who have not yet attained the age of 17

(Ill. Rev. Stat. 1983, ch. 37, par. 702—2). However, a person under the age of 17 could always be prosecuted under the adult criminal court system if, after an investigation and hearing, a juvenile court judge found that it was not in the best interests of the minor or of the public to proceed under the Juvenile Court Act. (Ill. Rev. Stat. 1983, ch. 37, par. 702—7(3).) Section 2—7(3) clearly states the factors upon which the juvenile court judge should base his or her decision to transfer.

The parties agree that the legislature has the authority to create statutory classifications provided they bear a rational relationship to a legitimate State interest. In *Jacobson v. Lenhart* (1964), 30 Ill. 2d 225, 227, this court stated:

> "The classification of objects, subjects, groups or persons for legislative purposes is, primarily a question for the legislature and courts will not interfere unless such classification is clearly unreasonable and palpably arbitrary."

The classification at issue herein is based on the age of the offender and the type of offense charged. Classification by age is not a new concept and has been held to be a permissible distinction. (*People v. Pardo* (1970), 47 Ill. 2d 420, 424.) It was not unreasonable for the legislature to determine that 15- and 16-year-olds who have committed certain crimes should be treated differently than those under 15.

The next aspect of the classification that must be addressed is the particular offenses which it specifies. The State asserts that the legislature rationally concluded that murder, rape, deviate sexual assault, and armed robbery with a firearm were the four crimes that posed the greatest danger to the community because of the violent nature of the offenses and the frequency of their commission. The defendants argue that, because juveniles who are 15 or 16 years of age and charged with at-

tempted murder, aggravated battery, aggravated arson, aggravated kidnaping, and armed robbery with a dangerous weapon other than a firearm are not included in section 2—7(6), the selection of the offenses enumerated in section 2—7(6) is arbitrary and irrational. We do not agree with defendants' argument. We believe that the inclusion of murder, rape, deviate sexual assault, and armed robbery with a firearm—to the exclusion of other Class X felonies—is rational for the reasons the State has asserted in its brief and advanced during oral argument. Murder, as the assistant public defender conceded during oral argument, is clearly a crime that, because of its violent nature, has always been set apart from other crimes. The defendants assert, however, that there is no rational reason to include rape, deviate sexual assault, and armed robbery with a firearm. The State maintains that the violent nature of the crimes, the frequency of their commission, and the premeditation necessary for armed robbery with a firearm set them apart from the other offenses not enumerated in section 2—7(6). We believe it was reasonable for the legislature to draw a distinction between the inchoate offense of attempted murder and the completed offenses listed in section 2—7(6). Heinous battery and aggravated kidnaping are also distinguishable from the offenses listed in section 2—7(6) because of the infrequency with which these offenses would be committed by a 15- or 16-year-old. We believe that this statute, which creates a limited exception to juvenile court jurisdiction, is rationally based on the age of the offender and the threat posed by the offense to the victim and the community because of its violent nature and frequency of commission.

Defendants also contend that the legislature has deprived them of the procedural due process to which they are entitled under the Supreme Court's holding in *Kent v. United States* (1966), 383 U.S. 541, 16 L. Ed. 2d 84,

86 S. Ct. 1045. In *Kent*, a District of Columbia statute provided that juveniles 16 years of age who were charged with an offense which, if committed by an adult, would subject that person to a possible sentence of death or life imprisonment could be tried as adults if, after a "full investigation," the juvenile court judge determined that juvenile court jurisdiction should be waived. (383 U.S. 541, 547, 16 L. Ed. 2d 84, 90, 86 S. Ct. 1045, 1050.) The Supreme Court held that, since the statute did not state standards to govern the juvenile court's determination, there could be a great variety of factors which might be considered and a disparity in the weight accorded these factors and that procedural due process would therefore require that a juvenile be accorded a hearing before waiver could be determined.

We cannot agree with defendants that the holding in *Kent* is dispositive of the instant case. Section 2—7(6) does not leave room for disparity in treatment between individuals within its proscription. All 15- and 16-year-olds who have committed the enumerated offenses, which we have held were not arbitrarily or unreasonably selected by the legislature, are to be prosecuted in the adult criminal court system. There is no discretionary decision to be made by the juvenile court, and therefore we do not believe that the holding in *Kent* is dispositive herein.

The defendants argue that because in the past a juvenile court judge had the power to determine whether a juvenile should be transferred to the adult criminal court system, section 2—7(6) usurps this power and violates the separation of powers doctrine of the Illinois Constitution.

The separation of powers doctrine is stated in article II, section 1, of the 1970 Illinois Constitution and provides: "The legislative, executive and judicial branches are separate. No branch shall exercise powers properly

belonging to another." (Ill. Const. 1970, art. II, sec. 1.) In *People ex rel. Carey v. Chrastka* (1980), 83 Ill. 2d 67, this court addressed the issue of whether section 5—12 of the Juvenile Court Act (the Habitual Juvenile Offender Act) (Ill. Rev. Stat., 1979 Supp., ch. 37, par. 705—12) violated the separation-of-powers doctrine. In *Chrastka*, the respondents argued that the Habitual Juvenile Offender Act created an irrebuttable and irrational presumption that an individual who was subject to the Act should be confined until the age of 21 years regardless of the person's age at the time of the offense, the seriousness of the offense, or other potentially mitigating circumstances. The respondents asserted that the Act usurped the function of the judiciary to impose a sentence by failing to require a judge to consider the seriousness of the offense. This court held:

> "It is indisputable that the legislature has the authority to define offenses against the People and to determine sentences, and this authority, by definition, enables the legislature to establish minimum sentences. Such legislative action necessarily limits the inquiry and function of the judiciary in imposing sentences, but this alone does not render the legislation violative of the constitutional provisions upon which respondents rely. Any resulting diminution of the judiciary's role is adequately remedied by the legislature's clear and comprehensive treatment of the subject, and we cannot say that the means chosen by the legislature is not ' "*** reasonably designed to remedy the evils which the legislature has determined to be a threat to the public health, safety and general welfare." ' " 83 Ill. 2d 67, 79.

We believe that the legislature, by lowering the age for juvenile court jurisdiction in relation to certain crimes, is not usurping a judicial function, but redefining the applicability of a statute which it created under its legislative power. We also believe that section 2—7(6) is reasonably designed to remedy the evils which the legis-

lature has determined to be a threat to the public health, safety and general welfare. All of the parties and *amici* argue statistics to support their theory that juvenile crime either is or is not a rising problem that needed to be acted upon. During the legislative debates there was much discussion and evidence presented to the legislators regarding the seriousness of the problem of juvenile crime. The assistant public defender argued in oral argument that the legislature was operating under the mistaken impression that juvenile crime was a serious problem. As a reviewing court, we would be usurping a legislative function if we were to analyze statistics and decide that the legislature, in our opinion, incorrectly interpreted them. Our role is not to determine how wise legislation may be, but rather to determine its constitutionality. The legislature enacted section 2—7(6) in response to what it determined to be a threat to the public's health, safety and general welfare. We will not engage in judicial legislation to the contrary.

We also believe that the defendants' argument that section 2—7(6) conflicts with the Habitual Juvenile Offender Act is without merit. Defendants argue that habitual juvenile offenders pose as serious a threat to the community as 15- and 16-year-old first-time offenders charged with murder, rape, deviate sexual assault, and armed robbery committed with a firearm. This issue raises a policy question rather than a violation of constitutional law. The legislature could have reasonably concluded that a juvenile recidivist who has not committed any of the enumerated offenses in section 2—7(6), which it perceived to be the most threatening crimes, should be treated differently under the law. As the State pointed out in its brief, records of prior delinquency can be varied and do not always fall in easily defined categories. The legislature could therefore have concluded that since juvenile recidivism is not easily definable, transfer of a

juvenile recidivist should be left to judicial discretion, or since a 15- or 16-year-old juvenile recidivist has refrained from committing the most serious crimes, he should not automatically be transferred. We do not believe that section 2—7(6) conflicts with the Habitual Juvenile Offender Act as the defendants assert.

Since we have held that section 2—7(6) is constitutional, we must address defendant J.S.'s and defendant T.F.'s further argument that, even if the statute is declared constitutional, the information or indictment filed against them must be dismissed. In both instances, the defendants have asserted that, since the count against them for robbery did not specifically allege that the robbery was committed "with a firearm" but instead stated that it occurred while armed "with a dangerous weapon," they should not be subject to automatic transfer under the statute. We disagree.

Shortly before oral argument in this matter, the State filed with this court a motion to amend the respective information and indictment in the cases of J.S. and T.F. We decided at that time that the motion would be considered with the case.

In its motion, the State asserts that even though the charging documents read as a whole are sufficient and even though it is unnecessary that a charging document allege facts establishing criminal court jurisdiction, it wishes to eliminate this collateral issue from the cases.

In *People v. Sirinsky* (1970), 47 Ill. 2d 183, the defendant therein alleged that, since the complaint against him was brought in the name of the city of Evanston for violation of a State statute, the complaint was fatally defective. This court held:

> "An offense charged must be sufficiently set forth so that the accused is apprised of the charge against him, enabled properly to prepare his defense and use any judgment against him as a bar to a future prosecution for the

same offense." 47 Ill. 2d 183, 186.

Since this court determined that the defendant in *Sirinsky* was provided with sufficient information of the charge to enable him to know the charge, prepare his defense, and protect against a second prosecution, it held that the appellate court had not erred in allowing an amendment of the complaint on appeal. The appellate court in *Sirinsky* had relied on our Rule 362(f), which provides: "The reviewing court may, of its own motion, before or after submission of the case for decision, order amendment to be made" (87 Ill. 2d R. 362(f)). We held that Rule 362(f) applied to the situation in *Sirinsky* even though it was a rule of civil appeals, that the irregularity in the caption was sheerly a formal one, and that the act of amending regularized the record rather than prejudicing the defendant. *People v. Sirinsky* (1970), 47 Ill. 2d 183, 188.

In the instant cases, defendants J.S. and T.F. have not yet been tried, and there is no conceivable way in which they will be prejudiced by allowing an amendment of the charging instruments. Whether or not the instruments which they used were actually firearms are questions of fact for the trier of fact, and we will not address that issue. However, we believe that the offenses charged were sufficiently set forth so as to enable the defendants to be apprised of the charges against them, to properly prepare their defenses, and to use any judgments entered against them as a bar to a future prosecution for the same offense.

We agree with the State that the charges read as a whole clearly specify that the defendants were charged with armed robbery with a firearm, but we will allow the State to amend the charging instruments to add the words "to wit: a firearm" after the phrase "while armed with a dangerous weapon."

Defendant L.W. raises an argument which specifically applies to his cause because his transfer to the adult criminal courts was predicated on the offense of deviate sexual assault. L.W. argues that since, commencing on July 1, 1984, deviate sexual assault was reclassified as criminal sexual assault and will not be among the offenses enumerated in section 2—7(6) unless the crime is *aggravated* criminal sexual assault, he is not within the proscription of section 2—7(6). L.W.'s argument is based on two premises. First, he asserts that the new law, which is Public Act 83—1067 (Ill. Rev. Stat., 1983 Supp., ch. 38, par. 12—14), effective July 1, 1984, is applicable to him. And second, he asserts that he would not be charged with *aggravated* criminal sexual assault under the new law. The State maintains that the new law is not applicable to L.W., but that, even if it were, he could still be charged with aggravated criminal sexual assault and transferred under section 2—7(6). In order to determine whether a statute is to be given prospective or retroactive application, we must look to the intent of the legislature. It is a well-established rule that "a statute will be given prospective application unless there is a clear expression of legislative intent that it is to be retroactively applied." (*Zimmerman Brush Co. v. Fair Employment Practices Com.* (1980), 82 Ill. 2d 99, 108.) We believe that since the legislature, in enacting Public Act 83—1067, specifically provided that the Act only applied to "those persons who commit offenses prohibited under Sections 12—13 through 12—16 of the Criminal Code of 1961, as amended, on or after the effective date of this amendatory Act" (Pub. Act 83—1067, sec. 27, 1983 Ill. Laws 7251, 7306), the new law was clearly not intended to apply to L.W., who allegedly committed the offense of deviate sexual assault on November 22, 1983. Since we do not believe the new law applies to L.W., it is unnecessary to decide whether L.W. would be charged with *ag-*

*gravated* criminal sexual assault.

It should be noted that, since oral argument in this consolidated appeal, the Appellate Court, Fourth District, decided the case of *People v. Reed* (1984), 125 Ill. App. 3d 319. The State was granted leave by this court to cite this case as additional authority. In *Reed*, after a trial by jury in the circuit court of Sangamon County, the defendant was convicted of armed robbery and attempted murder. On appeal, the defendant contended that section 2—7(6)(a), which caused him to be transferred to adult criminal court, was unconstitutional. The appellate court held that section 2—7(6)(a) was constitutional and that the statute did not deprive the defendant of his procedural and substantive due process or equal protection of the laws. The arguments that were made in *Reed* were similar to those raised and addressed in the instant appeal.

For all the foregoing reasons we reverse the judgments in cause Nos. 59319, 59556 and 59320.

*Judgments reversed.*