# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Croom*, 2012 IL App (4th) 100932

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DWAYNE T. CROOM, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-10-0932 |
| Argued | May 8, 2012 |
| Filed | May 21, 2012 |
| Rehearing denied | June 18, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | On appeal from the denial of defendant's motion for leave to file a successive postconviction petition, the appellate court held that defendant's motion was properly denied because he failed to satisfy the cause-and-prejudice test and that the automatic transfer provision of the Juvenile Court Act did not violate due process, even though it allowed defendant, who was charged with first degree murder committed when he was16 years old, to be transferred to adult court without a hearing. |
| Decision Under Review | Appeal from the Circuit Court of Champaign County, No. 05-CF-1023; the Hon. Thomas J. Difanis, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Michael J. Pelletier, Alan D. Goldberg, and Lauren A. Bauser (argued), all of State Appellate Defender's Office, of Chicago, for appellant. |
| | |
| | Julia Rietz, State's Attorney, of Urbana (Patrick Delfino, Robert J. Biderman, and Kathy Shepard (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| | |
| Panel | JUSTICE McCULLOUGH delivered the judgment of the court, with opinion. |
| | Presiding Justice Turner and Justice Cook concurred in the judgment and opinion. |

## OPINION

¶ 1    In May 2005, the State charged defendant, Dwayne T. Croom, with first degree murder (720 ILCS 5/9-1(a)(2) (West 2004)), alleging he struck three-year old Altravius Bolden in the abdomen, causing Altravius's death in June 2004. Defendant was 16 years old on the date of the alleged offense.

¶ 2    Prior to trial, defendant filed a motion to suppress oral statements he made to Detective Robert Rea while in a van. Defendant alleged the statements were made during a custodial interrogation where he "did not, and was not afforded the opportunity to knowingly waive his constitutional rights" to remain silent, consult an attorney, have an attorney present during the interrogation, and terminate the interrogation at any time, nor was he informed that any statements he made could be used against him in court. Further, defendant alleged "no effort was made *** to discover whether he was mentally or psychologically capable of making a voluntary statement." After hearing the evidence and listening to the parties' arguments, the trial court denied defendant's motion to suppress, finding defendant's statements while in the van were voluntary and that defendant was not in custody for purposes of *Miranda*. See *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

¶ 3    In September 2005, defendant was found unfit to stand trial, based on Dr. Lawrence Jeckel's medical opinion "that although [defendant] knows the function of the various participants in the court of law, there is significant doubt as to whether he can assist his attorney in his own defense." Jeckel based his opinion on the fact that defendant was "defensive and concrete" and "stubbornly refused to consider that a plea agreement might net him less prison time." Thus, Jeckel concluded, defendant "seemed to be unable to differentiate between a decision in the criminal justice system and the truth about the crime." In March 2006, defendant was restored to fitness.

¶ 4    In September 2006, defendant's jury trial commenced. The jury found defendant guilty

of first degree murder. In October 2006, defendant filed a motion for a new trial, alleging in part that the trial court erred in denying his motion to suppress. The court denied defendant's motion and sentenced him to 50 years in prison.

¶ 5 On direct appeal, defendant argued the trial court erred by denying his motion to suppress statements he made to Detective Rea while in the van (statements that Detective Rea testified to during trial), asserting the statements were made during a custodial interrogation and were inadmissible because he was not informed of his *Miranda* rights. This court affirmed defendant's convictions in February 2008. *People v. Croom*, 379 Ill. App. 3d 341, 352, 883 N.E.2d 681, 690 (2008).

¶ 6 In November 2008, defendant filed a postconviction petition challenging appellate counsel's effectiveness for failing to raise several claims on direct appeal. In December 2008, the trial court summarily dismissed defendant's petition, finding it frivolous and patently without merit. On appeal from the summary dismissal, defendant argued that appellate counsel was ineffective for failing to challenge the sufficiency of the State's evidence. This court affirmed the summary dismissal of the petition. *People v. Croom*, No. 4-09-0047 (Feb. 16, 2010) (unpublished order under Supreme Court Rule 23).

¶ 7 On October 4, 2010, defendant filed a motion seeking leave to file a successive postconviction petition, which the trial court denied on October 26, 2010.

¶ 8 This appeal followed.

¶ 9 The first issue on appeal is whether the automatic transfer provision of the Illinois Juvenile Court Act of 1987 (Juvenile Act) (705 ILCS 405/5-130 (West 2004)) violates federal and state due process because it subjects 15- and 16-year-old juveniles charged with certain enumerated crimes to be automatically transferred to adult court without a hearing.

¶ 10 The constitutionality of a criminal statute may be raised at any time. *In re J.W.*, 204 Ill. 2d 50, 61, 787 N.E.2d 747, 754 (2003). Whether a statute violates due process is reviewed *de novo*. *Miller v. Rosenberg*, 196 Ill. 2d 50, 57, 749 N.E.2d 946, 951 (2001). Statutes are presumed constitutional, and a party challenging the constitutionally bears the burden of establishing its invalidity. *People v. Wright*, 194 Ill. 2d 1, 24, 740 N.E.2d 755, 766 (2000). "[T]he legislature has wide discretion to establish penalties for criminal offenses, but this discretion is limited by the constitutional guarantee that a person may not be deprived of liberty without due process of law." *Wright*, 194 Ill. 2d at 24, 740 N.E.2d at 766-67.

¶ 11 Before turning to the substance of defendant's petition, we first dispose of the State's contention that defendant has forfeited his due process argument by failing to provide notice of it to the Attorney General pursuant to Illinois Supreme Court Rule 19 (eff. Sept. 1, 2006).

¶ 12 Rule 19 provides in pertinent part:

"(a) Notice Required. In any cause or proceeding in which the constitutionality or preemption by federal law of a statute, ordinance, administrative regulation, or other law affecting the public interest is raised, *and to which action or proceeding the State* or the political subdivision, agency, or officer affected is *not already a party*, the litigant raising the constitutional or preemption issue shall serve an appropriate notice thereof on the Attorney General, State's Attorney, municipal counsel or agency counsel, as the case may be." (Emphases added.) Ill. S. Ct. R. 19(a) (eff. Sept. 1, 2006).

"The purpose of the notice is to give the affected agency or officer the opportunity to intervene in the proceeding for the purpose of defending the constitutionality of the statute, ordinance, or administrative regulation." *Village of Lake Villa v. Stokovich*, 211 Ill. 2d 106, 115, 810 N.E.2d 13, 20 (2004). Here, the State's Attorney was clearly given notice that defendant is challenging the constitutionality of the automatic transfer provision of the Juvenile Act, as the State is a party to this proceeding. Thus, finding that the Rule 19 notice requirements have been met, we turn to the merits of defendant's due process claim.

¶ 13    Defendant argues that the automatic transfer provision of the Juvenile Act violates (1) substantive due process because juveniles are transferred to adult court without any investigation to determine if transfer is appropriate, and (2) procedural due process because transferring juveniles to adult court without a hearing bears no rational relationship to any legitimate government purpose. We disagree.

¶ 14    The automatic transfer provision of the Juvenile Act provides:

"The definition of delinquent minor under Section 5-120 of this Article shall not apply to any minor who at the time of an offense was at least 15 years of age and who is charged with first degree murder ***.

These charges and all other charges arising out of the same incident shall be prosecuted under the criminal laws of this State." 705 ILCS 405/5-130(1)(a) (West 2004).

¶ 15    Defendant acknowledges that the Illinois Supreme Court has previously found the automatic transfer provision of the Juvenile Act to be constitutional. See *People v. J.S.*, 103 Ill. 2d 395, 405-06, 469 N.E.2d 1090, 1095 (1984); *People v. M.A.*, 124 Ill. 2d 135, 146-47, 529 N.E.2d 492, 497 (1988). In *J.S.*, our supreme court applied the rational basis test and held that because the automatic transfer provision applied only to 15- and 16-year-olds who committed the most serious Class X felonies, the classification was "rationally based on the age of the offender and the threat posed by the offense to the victim and the community because of its violent nature and frequency of commission." *J.S.*, 103 Ill. 2d at 404, 469 N.E.2d at 1095. However, defendant urges this court to revisit the rationale set forth in *J.S.* and other similar cases in light of *Roper v. Simmons*, 543 U.S. 551 (2005), and *Graham v. Florida*, 560 U.S. ___, 130 S. Ct. 2011 (2010). Specifically, defendant argues *Roper* and *Graham* stand for the proposition that, because none of the four penological justifications that provide the rationale for adult sentencing–retribution, deterrence, incapacitation, and rehabilitation–apply to juvenile offenders, it is no longer rational to automatically transfer juveniles to adult court. We disagree.

¶ 16    This exact issue was recently addressed by the First District Appellate Court in *People v. Jackson*, 2012 IL App (1st) 100398, ¶ 16, 2012 WL 398818, at *4, and *People v. Salas*, 2011 IL App (1st) 091880, ¶¶ 75-80, 961 N.E.2d 831, 848-50. Both *Jackson* and *Salas* held that *Roper* and *Graham*, which dealt with challenges made to the sentencing statutes under the eighth amendment, did not apply to the due process constitutional challenge at issue in their respective cases. The *Roper* Court held that the eighth amendment's cruel and unusual punishment clause forbade a sentence of death for juveniles. *Roper*, 543 U.S. at 578. The *Graham* Court held that the eighth amendment forbade a sentence of life without parole for

juvenile offenders who had not committed homicide. *Graham*, 560 U.S. at ___, 130 S. Ct. at 2030. No due process arguments were raised in either *Roper* or *Graham*. Those cases are clearly distinguishable because they applied (1) a different analysis (2) under a different test for (3) an alleged violation of a different constitutional provision regarding severe sentencing sanctions–not the automatic transfer to adult court at issue here. Accordingly, we adopt the First District's holding and conclude that "defendant's argument is without merit as [*J.S.*] remains on solid footing with the Supreme Court's holdings in *Roper* and *Graham*. [Thus, d]efendant's substantive due process rights were not violated when he was automatically transferred to adult court pursuant to the automatic transfer provision of the Illinois Juvenile Court Act of 1987 ***." *Jackson*, 2011 IL App (1st) 100398, ¶ 16, 2012 WL 398818, at *4.

¶ 17          Defendant also asserts that the Supreme Court's decades' old holding in *Kent v. United States*, 383 U.S. 541 (1966), which held transfers from juvenile to adult court violated procedural due process absent an investigation to determine whether transfer was appropriate, requires a finding of unconstitutionality. We disagree.

¶ 18          At issue in *Kent* was a District of Columbia statute that provided juveniles over the age of 16 years could be tried as adults if they were charged with an offense that, if committed by an adult, carried a possible sentence of death or life imprisonment. *Kent*, 383 U.S. at 547-48. The statute allowed juveniles to be tried as adults for these crimes if, after a "full investigation" by the juvenile court judge, the juvenile judge waived jurisdiction. *Kent*, 383 U.S. at 547-48. The court found this statute violated procedural due process because it gave the "Juvenile Court a substantial degree of discretion as to the factual considerations to be evaluated, the weight to be given them and the conclusion to be reached." *Kent*, 383 U.S. at 553. In *J.S.*, our supreme court specifically found that *Kent* does not apply to the automatic transfer provision of the Juvenile Act because, unlike the statute at issue in *Kent*, the automatic transfer provision does not allow any discretion in the transferring of juveniles to adult court, as every 15- and 16-year-old charged with one of the enumerated offenses is automatically transferred and prosecuted under the criminal laws. *J.S.*, 103 Ill. 2d at 405, 469 N.E.2d at 1095. As such, defendant's argument lacks merit.

¶ 19          The second issue on appeal is whether defendant demonstrated cause and prejudice sufficient to warrant granting him leave to file a successive postconviction petition pursuant to section 122-1(f) of the Post-Conviction Hearing Act (725 ILCS 5/122-1(f) (West 2010)). In his motion, defendant asserted that trial counsel was ineffective for failing to file a motion for reconsideration of the motion to suppress defendant's statements to the police based upon the pretrial determination that defendant was unfit to stand trial. Specifically, defendant maintained that he was unable to raise this issue in his initial petition for the following two objective reasons: (1) he was not in possession of the legal documents regarding his fitness that were necessary to support his claim, and (2) the correctional facility was on lockdown status when his initial petition was due and, thus, he was unable to seek assistance from the law clerk in amending his petition to include the claim and in preparing an affidavit explaining why he was unable to attach supporting documentation. Further, defendant argued that "[a] failure to allow him to secure a full and fair hearing on such legal issue will result in prejudice, and deprive [him] of the constitutionally guaranteed 'due process' which he is entitled to."

¶ 20    The trial court denied defendant's motion for leave to file a successive postconviction petition for the following reasons: (1) defendant did not allege a denial of his constitutional rights, (2) he failed to identify an objective factor that impeded his ability to bring his claim in the initial postconviction petition, and (3) defendant did not point to any prejudice that so infected the trial that the resulting conviction violated due process. Specifically, the court stressed that defendant was present when the court found him unfit and, thus, a simple affidavit regarding the claim by defendant would have sufficed to initially raise the issue. Further, the court stated "[a] finding of unfitness many months after the statement in question was made does not diminish the knowing [nature] and voluntariness of said statement."

¶ 21    The denial of a defendant's motion to file a successive postconviction petition is reviewed *de novo. People v. Gillespie*, 407 Ill. App. 3d 113, 124, 941 N.E.2d 441, 452 (2010).

¶ 22    The Post-Conviction Hearing Act (725 ILCS 5/art. 122 (West 2010)) provides a remedy for defendants who have suffered a substantial violation of their constitutional rights at trial. *People v. Pendleton*, 223 Ill. 2d 458, 471, 861 N.E.2d 999, 1007 (2006). A postconviction proceeding is a "collateral attack on a prior conviction and sentence, and the scope of such a proceeding is generally limited to constitutional matters that have not been, or could not have been, previously adjudicated." *People v. Cummings*, 375 Ill. App. 3d 513, 518, 873 N.E.2d 996, 1001 (2007).

¶ 23    Defendants may only file one postconviction petition without leave of court. 725 ILCS 5/122-1(f) (West 2010). "[A] ruling on an initial post[ ]conviction petition has *res judicata* effect with respect to all claims that were raised or could have been raised in the initial petition." *People v. Jones*, 191 Ill. 2d 194, 198, 730 N.E.2d 26, 29 (2000). "Leave of court may be granted only if a petitioner demonstrates cause for his or her failure to bring the claim in his or her initial post[ ]conviction proceedings and prejudice results from that failure" (725 ILCS 5/122-1(f) (West 2010)), or where necessary to prevent a fundamental miscarriage of justice, *i.e.*, a defendant must show actual innocence, or in a death penalty case, that a defendant would not have been eligible for the death penalty in the absence of the constitutional error. *People v. Pitsonbarger*, 205 Ill. 2d 444, 459, 793 N.E.2d 609, 621 (2002).

¶ 24    Citing the Second District Appellate Court's decision in *People v. LaPointe*, 365 Ill. App. 3d 914, 924, 850 N.E.2d 893, 901 (2006), *aff'd on other grounds*, 227 Ill. 2d 39, 45, 879 N.E.2d 275, 278 (2007), defendant argues he need only state the "gist" of a claim of cause and prejudice, and that an actual demonstration of cause and prejudice need not be made until the second and third stages of postconviction proceedings. We disagree. A petition for leave to file a successive postconviction petition is not a postconviction petition and never advances to additional stages of review. See *People v. Edwards*, 2012 IL App (1st) 091651, ¶ 19, 2012 WL 555911, at *4 ("a successive petition 'is not considered "filed" for purposes of section 122-1(f), and further proceedings will not follow, until leave is granted, a determination dependent upon a defendant's satisfaction of the cause-and-prejudice test' " (quoting *People v. Tidwell*, 236 Ill. 2d 150, 161, 923 N.E.2d 728, 734 (2010))). Thus, a court will not grant leave to file a successive postconviction petition unless a defendant demonstrates cause and prejudice. See *People v. Conick*, 232 Ill. 2d 132, 141, 902 N.E.2d

637, 643 (2008).

¶ 25 To satisfy the cause-and-prejudice test, a defendant must show (1) good cause for failing to raise the claimed errors in a prior proceeding and (2) actual prejudice resulting from the claimed errors. *Pitsonbarger*, 205 Ill. 2d at 460-62, 793 N.E.2d at 621-23. "A defendant shows 'cause' by identifying an objective factor external to the defense that impeded his efforts to raise his claim in the earlier proceeding." *Edwards*, 2012 IL App (1st) 091651, ¶ 20, 2012 WL 555911, at *5 (citing *Pitsonbarger*, 205 Ill. 2d at 460, 793 N.E.2d at 622); see also 725 ILCS 5/122-1(f)(1) (West 2010). " ' "Prejudice" exists where the defendant can show that the claimed constitutional error so infected his trial that the resulting conviction violated due process.' " *Edwards*, 2012 IL App (1st) 091651, ¶ 20, 2012 WL 555911, at *5 (quoting *People v. Morgan*, 212 Ill. 2d 148, 154, 817 N.E.2d 524, 527 (2004)); see also 725 ILCS 5/122-1(f)(2) (West 2010).

¶ 26 As "cause" for failing to raise this claim in his initial postconviction petition, defendant maintains (1) he was not in possession of the legal documents regarding his fitness that were necessary to support the claim and (2) the correctional facility was on lockdown when his initial petition was due and, thus, he was unable to seek assistance from the law clerk in amending his petition to include the claim and in preparing an affidavit explaining why he was unable to attach supporting documentation. See 725 ILCS 5/122-2 (West 2010). The State responds that neither of the reasons given by defendant is an "objective factor external to the defense, which impeded [defendant's] ability to raise [this] specific claim at the initial postconviction petition" (citing *Pitsonbarger*, 205 Ill. 2d at 462, 793 N.E.2d at 623). We agree.

¶ 27 We note that defendant cites several cases to support the proposition that courts have recognized a prisoner's lack of access to legal materials because of a prison lockdown can excuse the late filing of a postconviction petition. See *People v. Marino*, 397 Ill. App. 3d 1030, 1034, 927 N.E.2d 75, 79 (2010) (2d Dist.); *People v. Van Hee*, 305 Ill. App. 3d 333, 337, 712 N.E.2d 363, 367 (1999) (2d Dist.); *People v. Mitchell*, 296 Ill. App. 3d 930, 933, 696 N.E.2d 365, 367 (1998) (3d Dist.). Defendant urges us to extend the same reasoning to this case, where defendant did not have access to the "law clerk" because the prison was alleged to have been on lockdown. We decline to do so.

¶ 28 Even if we were to find defendant has established cause–which we do not–he cannot demonstrate prejudice.

¶ 29 In his petition for leave, defendant asserted "[a] failure to allow him to secure a full and fair hearing on such legal issue will result in prejudice, and deprive [him] of the constitutionally guaranteed 'due process' which he is entitled to *** given the overwhelming significance of such legal issue regarding [defendant's] mental state at the time in which incriminating statements were secured from him." In his brief, defendant contends he "was arguably prejudiced by counsel's failure to litigate whether his mental capacity–and particularly his inability to distinguish between the truth and the steps of a criminal proceeding–rendered his confession involuntary." Thus, defendant argues the omission of this claim from his initial postconviction petition precluded him from determining if counsel's failure to litigate the matter constituted trial strategy or incompetence. In contrast,

the State maintains, as the trial court did, "the knowing and voluntary nature of defendant's statement was not diminished by the finding of unfitness many months after the statement was made." We agree with the State.

¶ 30    The statements at issue here were made in July 2004. Defendant was found unfit to stand trial in September 2005. A finding of unfitness is based on the determination that a defendant "is unable to understand the nature and purpose of the proceedings against him or to assist in his defense." 725 ILCS 5/104-10 (West 2010). Here, it appears defendant was found unfit to stand trial based on defendant's insistence that "if he was innocent, he should not take a plea" and "that the jury would do the right thing." Specifically, Dr. Jeckel opined defendant "stubbornly refused to consider that a plea agreement might net him less prison time" and, thus, defendant "seemed unable to differentiate between a decision in the criminal justice system and the truth about the crime." Moreover, a finding of unfitness for trial does not necessitate a finding that statements given more than one year earlier were involuntary. The determination that a defendant is unable to assist in his defense at the time of trial does not mean that the same defendant was unable to voluntarily make statements to the police prior to a finding of unfitness to stand trial. In fact, after hearing testimony regarding the voluntariness of defendant's statements at issue here during the initial suppression hearing, including defendant's own testimony, the trial court specifically found the statements made to Detective Rea while in the van were voluntarily made. This analysis conducted by the trial court at the initial suppression hearing would not have changed, even after defendant was found unfit to stand trial, and thus the outcome would have been the same. As such, defendant was not prejudiced by defense counsel's failure to file a motion to reconsider the motion to suppress.

¶ 31    In sum, we hold that the automatic transfer provision of the Juvenile Act does not violate due process and the trial court did not err in denying defendant's petition for leave to file a successive postconviction petition because defendant failed to satisfy the cause-and-prejudice test.

¶ 32    For the reasons stated, we affirm the trial court's judgment. As part of our judgment, we award the State its $75 statutory assessment against defendant as costs of this appeal.

¶ 33    Affirmed.