2024 IL App (1st) 221602-U

THIRD DIVISION
March 29, 2024

No. 1-22-1602

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 99 CR 10375 04 |
| | ) | |
| LINORD THAMES, | ) | Honorable |
| | ) | Angela Munari Petrone, |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE REYES delivered the judgment of the court.
Justices D.B. Walker and Van Tine concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Affirming the denial of leave to file a successive postconviction petition where the defendant failed to establish cause and prejudice.

¶ 2    Following a jury trial, defendant Linord Thames[1] was convicted of first-degree murder, aggravated kidnapping, and attempted armed robbery and sentenced to 28 years' imprisonment. In this appeal, defendant challenges the denial of his motion for leave to file a successive postconviction petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.*

---

[1] We note that defendant's name is also spelled "Linard" in the record on appeal.

(West 2016)). Defendant contends that he established cause and prejudice for his claim that he fulfilled his part of an agreement with a police detective under which he would not be charged in this case if he took and passed a polygraph test. The State maintains that the circuit court of Cook County properly denied defendant leave to file a successive postconviction petition where he failed to establish cause and prejudice. For the reasons discussed herein, we affirm.

¶ 3                                      BACKGROUND

¶ 4     As this case has a lengthy and complex procedural history, we include only those facts necessary to understand and resolve this appeal.[2] On March 26, 1999, 17-year-old Quinton Kirkwood (Kirkwood) played dice with defendant and others in an apartment on Homan Avenue in Chicago. Kirkwood won several thousand dollars, while James Williams (Williams) lost money. Kirkwood's body was discovered the following day in a basement stairwell of a building located on Christiana Avenue in Chicago; he had been fatally shot. On April 30, 1999, defendant and four codefendants – Williams, Antonio Thomas (Antonio), Duel Thomas (Duel), and Jeff Henderson (Henderson) – were charged by indictment with the first degree murder, aggravated kidnapping, kidnapping, and attempted armed robbery of Kirkwood. The State prosecuted defendant on a theory of accountability.

¶ 5                                  *Pretrial Proceedings*

¶ 6     Prior to trial, defendant filed a motion to quash and suppress statements. Detective Patrick Foley (Detective Foley) testified that defendant was questioned as a possible witness on March 27, 1999. According to Detective Foley, defendant suggested taking a "lie detector" test "to prove I'm telling the truth." Defendant took and passed a polygraph test the following day and was released. On March 29, 1999, defendant voluntarily returned to the police station to

---

[2] The facts herein are primarily taken from our prior decision in *People v. Thames*, 2021 IL App (1st) 180071.

retrieve his cellphone. Following his release, defendant had been implicated by others as being involved in Kirkwood's murder. Detective Foley read defendant his *Miranda* rights (see *Miranda v. Arizona*, 384 U.S. 436 (1966)), which defendant waived, and Detective Foley again questioned him. Facilitated by an assistant state's attorney (ASA), defendant then provided a written statement (discussed below). The motion to quash and suppress was denied before trial.

¶ 7                              *Trial Proceedings*

¶ 8      After an initial mistrial, the State presented the testimony of eight witnesses at defendant's second jury trial, including ASA Kelli Husemann (Husemann).

¶ 9                              ASA Kelli Husemann

¶ 10     Husemann testified that on March 30, 1999, she prepared a handwritten statement based on the oral statements made by defendant in the presence of Detective Foley. The entire text of the written statement provided by defendant was admitted into evidence and published to the jury.

¶ 11     In the written statement, defendant indicated that he had participated in a dice game on March 26, 1999, with Kirkwood, Williams, Duel, Antonio, Henderson, Frederick Laws (Laws), Keith Walker (Walker), and other individuals in an apartment on Homan. During the game, Duel went to Laws' uncle's nearby residence. Toward the end of the game, Kirkwood had won approximately $2500, while Williams had lost $1500. Williams stared at defendant until they made eye contact and pointed at Kirkwood, who was looking down at the time. Williams mouthed to defendant to "go get Duel" so they could "get the money off of" Kirkwood.

¶ 12     Defendant found Duel and informed him that Williams wanted to rob Kirkwood and retrieve his money. Duel responded that he could send another individual to the dice game to kick the door in and take the money. Defendant indicated that was unnecessary and that Duel

should wait outside of the apartment until Kirkwood left the apartment.

¶ 13    Defendant then returned to the apartment where the dice game was still taking place. Shortly thereafter, Duel followed him into the apartment. When Kirkwood noticed Duel, he "got jittery." Kirkwood then passed out some money to the participants of the game, placed the remainder of the money in his pocket, and left. Defendant and Williams waited in the apartment for Duel to return with Kirkwood's money.

¶ 14    Approximately five minutes later, Duel returned to the apartment and stated that he did not have the money, as Kirkwood "took off" running. Duel also informed defendant and Williams that he "wasn't going to do it like that," *i.e.*, rob Kirkwood, as their neighbors recognized Duel and would observe him chasing Kirkwood. After another five minutes had passed, Kirkwood returned to the apartment and Duel left. Shortly thereafter, Ronnie Wheatley (Wheatley) arrived and asked for Williams. Arrangements were made for Wheatley to drive Kirkwood to his home in Williams' vehicle. Wheatley and then Kirkwood left the apartment.

¶ 15    A minute later, defendant heard a strange sound outside. He looked out of a window and observed Antonio grabbing Kirkwood on the stairway as he struggled. Defendant relayed what he observed to Williams, who told him to "[b]e quiet." When defendant looked out of the window a second time, he did not notice anyone outside. After defendant and Williams exited the apartment, Wheatley informed defendant, "[s]ome m*** pulled a gun in people's faces. I don't play that s***." Defendant told Wheatley to "keep his mouth closed." Defendant and Williams subsequently met Duel, who informed them that Antonio had taken Kirkwood to Kirkwood's house to get the money.

¶ 16    Sometime later, defendant heard approximately nine gunshots. A minute later, he observed Henderson quickly driving a black vehicle out of an alley. Walker then approached

defendant and indicated that defendant would be "in trouble," as Antonio had shot Kirkwood. Defendant called Williams on the telephone and informed him "things went bad" and relayed that Antonio had shot Kirkwood. Williams then picked up defendant in his vehicle, and they spoke for a few minutes. Defendant subsequently met Duel and Antonio and confirmed that Antonio had fatally shot Kirkwood. In the written statement, defendant indicated that he knew "things didn't go as they should have," "he was caught up in the middle," and he "knows now the whole idea of robbing [Kirkwood] was a stupid idea."

¶ 17     ASA Husemann further testified that, after defendant provided the statement, she read the statement aloud to defendant. He was given an opportunity to review and change the written statement. In addition, ASA Husemann, Detective Foley, and defendant each signed every page of the statement and initialed the changes made by defendant.

¶ 18                                    Defendant's Evidence

¶ 19     Defendant testified on his own behalf. On March 26, 1999, he watched the dice game; Kirkwood and Williams participated in the game. Thereafter, defendant went to Antonio's birthday party, which was taking place in Laws' uncle's home. At the party, defendant informed Duel that Williams had requested he return to the dice game; defendant then returned to the dice game. When he arrived, Kirkwood left the apartment but returned five minutes later. Defendant then heard someone "hollering." He pulled the window curtains and observed Antonio holding Kirkwood by his collar and pushing him against a wall. Defendant informed Williams, but Williams instructed him to "be quiet." On the following day, defendant met Wheatley and indicated it was a "sad situation" and that he wanted to find out who had killed Kirkwood. Defendant also mentioned to Wheatley that he should be careful.

¶ 20     During his testimony, defendant disavowed portions of the statement provided to ASA

Husemann. He testified that he did not implicate himself in the planning of the robbery during his interviews with the police or ASA Husemann. Although defendant testified that he did not recall that ASA Husemann allowed him to read the written statement, he acknowledged that she had read the statement aloud to him and provided him an opportunity to make corrections.

¶ 21                          *Verdict and Posttrial Proceedings*

¶ 22    The jury found defendant guilty of first degree murder, aggravated kidnapping, and attempted armed robbery. Defendant filed two motions for a new trial. At the hearing on the motions, Frank Askew (Askew) testified that he was Wheatley's former coworker. According to Askew, Wheatley had informed him before trial that, if defendant did not give him money, he would "take care of business." Wheatley also relayed to Askew that he was tired of being in jail, that he did not have any cigarettes, and that defendant had visited other people in jail but not him. The circuit court denied defendant's motions and sentenced him to concurrent prison terms of 28 years for first degree murder and 14 years for aggravated kidnapping.

¶ 23                                  *Direct Appeal*

¶ 24    Defendant filed a direct appeal, contending (a) his second jury trial violated double jeopardy, as he was retried after the first trial had ended in a mistrial and, alternatively, (b) he should be granted a new trial since the circuit court erred in allowing Wheatley's testimony to be admitted into evidence. This court affirmed the trial court's judgment. *People v. Thames*, No. 1-02-0324 (2002) (unpublished order under Illinois Supreme Court Rule 23). Defendant filed a petition for leave to appeal to the Illinois Supreme Court, which was denied. *People v. Thames*, 213 Ill. 2d 573 (2005) (table).

¶ 25                          *Initial Postconviction Petition*

¶ 26    On January 30, 2008, defendant filed his initial petition for postconviction relief. He

alleged, in part, that he was denied due process by (a) the State's failure to disclose alleged benefits that were provided to Wheatley and Laws in exchange for their testimonies and Wheatley's alleged pending violation of his probation and (b) the State's presentation of false testimony from Wheatley and Laws. On June 25, 2009, the trial court granted the State's motion to dismiss defendant's petition at the second stage of postconviction proceedings, and this court affirmed the circuit court's dismissal. *People v. Thames*, No. 1-09-2054 (2011) (unpublished order under Illinois Supreme Court Rule 23).

¶ 27                    *First Successive Postconviction Petition*

¶ 28    On September 15, 2010, defendant filed a successive postconviction petition alleging that (a) an affidavit provided by Wheatley presented newly discovered evidence that would support his claim of actual innocence and (b) the State failed to disclose that Wheatley had received leniency in his pending violation of probation case in exchange for his trial testimony. The circuit court ultimately dismissed the petition at the second stage, and this court affirmed. *People v. Thames*, 2017 IL App (1st) 152018-U.

¶ 29                        *Section 2-1401 Petition*

¶ 30    In June 2014, while the appeal of the dismissal of his successive postconviction petition was pending, defendant filed a *pro se* petition for relief from judgment (see 735 ILCS 5/2-1401 (West 2014)). Defendant alleged that his conviction was void, as he had an agreement with Detective Foley that if he took and passed a polygraph test he would not be charged and would be released. The petition stated that on March 27, 1999, he entered into the agreement with Detective Foley and that, on the following morning, he took the polygraph test, passed, and was released. On March 29, 1999, defendant went back to the police station to retrieve his cellphone, and he was taken into an interview room where he was later interviewed by an ASA.

Defendant subsequently amended this petition.

¶ 31 In December 2015, an attorney was granted leave to file her appearance on defendant's behalf. Defense counsel subsequently withdrew the section 2-1401 petition and indicated she would seek leave to file a successive petition instead.

¶ 32                                  *Second Successive Postconviction Petition*

¶ 33 On June 16, 2016, defendant filed his motion for leave to file his second successive postconviction petition. The motion requested leave to file a single claim: that defendant's due process rights were denied when Detective Foley reneged on his promise to treat defendant as a witness and not arrest him if he cooperated and passed a polygraph test. Defendant, however, was arrested the next day and charged with the offense.

¶ 34 Two affidavits were attached to defendant's motion. In the first affidavit, defendant averred that "Officer Foley told me that I did not need a lawyer. I would be allowed to go home and that I would not be charged in this case, if I take a polygraph test and passed it." The second affidavit was from defendant's mother, Diane Wiliams, who averred that Detective Foley informed her that she could pick up defendant, as he passed a polygraph test and was not being charged. Also attached to the motion was a copy of the polygraph test results indicating that "no deception" was detected.

¶ 35 The record also contained a document titled "successive postconviction petition" with a partially handwritten date of September 15, 2016. This petition was identical to the petition filed on September 15, 2010, and alleged the same claims regarding Wheatley's affidavit.

¶ 36 The circuit court ultimately issued a ruling on November 8, 2017. The circuit court held, in part, that the "matter is ripe for adjudication under the second stage of [postconviction] proceedings." The circuit court found that defendant's claims of actual innocence and regarding

Ronnie Wheatley were barred by the doctrine of *res judicata*. As to defendant's claim regarding Detective Foley's alleged promise, the circuit court found that defendant failed to make a substantial showing of a constitutional violation. The circuit court thus dismissed the petition and denied defendant's motion for reconsideration.

¶ 37    On appeal, this court held that the circuit court erred "when it declined to make a determination regarding cause and prejudice, bypassing section 122-1(f) of the Act, moving 'the petition' to second-stage proceedings, and entering a second-stage dismissal on 'the petition.' " *People v. Thames*, 2021 IL App (1st) 180071, ¶ 94. We reversed the judgment and remanded the matter for the circuit court to conduct an independent analysis of whether the motion for leave to file a successive postconviction petition meets the cause-and-prejudice test as set forth in section 122-1(f) of the Act. *Id.* ¶ 96; 725 ILCS 5/122-1(f) (West 2016).

¶ 38    Following remand, the circuit court entered an order on October 5, 2022, finding that defendant's claim regarding Detective Foley's purported broken promise was forfeited. The circuit court stated the matter was already litigated during the hearing on the pretrial motion to quash arrest and suppress statements; the issue thus could have been raised on direct appeal.

¶ 39    As to cause and prejudice, the circuit court found that defendant failed to show cause for not bringing the polygraph test claim in his earlier postconviction petition and "waiting 17 years, 5 months, and 18 days after the alleged promise was made." The circuit court rejected defendant's argument that he did not make the polygraph claim earlier since *People v. Marion*, 2015 IL App (1st) 131011, had not been decided when he filed postconviction petitions in 2008 and 2010. Citing *People v. Starks*, 106 Ill. 2d 441 (1985), and *People v. Smith*, 233 Ill. App. 3d 342 (1992), the circuit court opined that the "holding in *Marion* is not 'new' as defendant suggests." The circuit court held that no due process violation occurred, as Detective Foley kept

his promise by releasing defendant after he passed the polygraph test. The circuit court further found that defendant's affidavit did not aver that Detective Foley stated that defendant would *never* be charged, even if new information developed in the case.

¶ 40    Defendant filed this timely appeal.

¶ 41                                          ANALYSIS

¶ 42    Defendant contends he established cause and prejudice for his claim that he fulfilled his part of an enforceable agreement with Detective Foley under which he would not be charged in this case if he cooperated with the police investigation and passed a polygraph test. According to defendant, his claim "lacked readily available legal basis prior to the issuance of recent caselaw."

¶ 43                          *Successive Postconviction Petitions*

¶ 44    The Act "provides a statutory remedy for criminal defendants who have suffered substantial violations of their constitutional rights at trial." *People v. Wilson*, 2023 IL 127666, ¶ 22. "A postconviction proceeding is a collateral attack on a final judgment, and constitutional issues that were raised and decided on direct appeal are barred from postconviction consideration by the doctrine of *res judicata*, while issues that could have been raised, but were not, are forfeited." *Id.* In addition to this procedural default rule, both the Act and Illinois caselaw make clear that the filing of only one postconviction petition is contemplated. *People v. Taliani*, 2021 IL 125891, ¶ 53. See also *People v. Bailey*, 2017 IL 121450, ¶ 39 (stating that "successive postconviction petitions are highly disfavored"); *People v. Croom*, 2012 IL App (4th) 100932, ¶ 23 (noting that "[d]efendants may only file one postconviction petition without leave of court"). As successive petitions impede the finality of criminal litigation, the rules barring successive petitions are relaxed only "when fundamental fairness so requires." *People v.*

*Pitsonbarger*, 205 Ill. 2d 444, 458 (2002).

¶ 45    Illinois courts have recognized only two exceptions where "fundamental fairness" requires the lifting of the bar against successive petitions. *Wilson*, 2023 IL 127666, ¶ 23. The first is the "cause and prejudice" exception, which has been codified in the Act. *Id.* See 725 ILCS 5/122-1(f) (West 2016) (noting that leave of court may be granted only if a petitioner demonstrates cause for his failure to bring his claim in his initial post-conviction proceedings and prejudice results from that failure). The second is the "fundamental miscarriage of justice" exception, which requires a petitioner to make a persuasive showing of actual innocence. *Taliani*, 2021 IL 125891, ¶ 55.

¶ 46    In this case, defendant invoked the "cause and prejudice" exception. To establish cause, a defendant must identify an objective factor which impeded his ability to raise a specific claim during his initial postconviction proceedings. 725 ILCS 5/122-1(f) (West 2016). A defendant shows prejudice by demonstrating that the claim not raised during his initial postconviction proceedings so infected the trial that the resulting conviction violated due process. *Id.*

¶ 47    Our review of the denial of a defendant's motion for leave to file a successive postconviction petition is *de novo*. *Bailey*, 2017 IL 121450, ¶ 13. Accord *Croom*, 2012 IL App (4th) 100932, ¶ 21. "*De novo* consideration means that a reviewing court performs the same analysis that a trial judge would perform." *People v. Walker*, 2022 IL App (1st) 201151, ¶ 21.

¶ 48                                           *Cause*

¶ 49    As noted above, to demonstrate "cause," defendant must identify an objective factor which impeded his ability to raise the specific claim at issue – *i.e.,* the violation of his purported agreement with Detective Foley as to the polygraph test – during his initial postconviction proceedings. In his motion for leave to file the second successive postconviction petition,

11

defendant asserted that his claim satisfied the cause requirement in that, while the facts were known to him at the time of trial, the legal basis for the claim did not arise until this court decided *Marion*, 2015 IL App (1st) 131011. On appeal, defendant contends that his claim was not readily available until the decision of the Illinois Supreme Court in *People v. Stapinski*, 2015 IL 118278, which was decided approximately six months after *Marion*. For the reasons discussed below, we disagree with his contentions.

¶ 50 In *Marion*, a police officer allegedly promised the defendant that the State would not arrest him for narcotics offenses if the defendant helped the police with crime prevention efforts. *Marion*, 2015 IL App (1st) 131011, ¶ 1. After various proceedings, the trial court denied the defendant's motion to dismiss his indictments for possession of cocaine and cannabis, finding that (a) the defendant failed to prove an enforceable agreement with the police, and (b) the police lacked authority to promise not to arrest a suspect in exchange for assistance with police work. *Id.* ¶ 3. In reversing the trial court, the appellate court held that "police have authority to agree not to arrest a suspect in exchange for cooperation with police work." *Id.* ¶ 4.

¶ 51 In *Stapinski*, the trial court determined that a police sergeant entered into a cooperation agreement with the defendant in which she promised not to charge the defendant with possession of ketamine if he assisted with the apprehension of the intended recipients of the ketamine; the trial court thus dismissed an indictment against the defendant. *Stapinski*, 2015 IL 118278, ¶ 25. The Illinois Supreme Court affirmed the judgment of the trial court. *Id.* ¶ 56.

¶ 52 While defendant maintains that *Stapinski* provided the legal basis for his claim, we note that the *Stapinski* court relied on a 1988 decision, *People v. Schmitt*, 173 Ill. App. 3d 66 (1988), *rev'd on other grounds*, 131 Ill. 2d 128, which it characterized as "directly on point." *Stapinski*, 2015 IL 118278, ¶ 37. In *Schmitt*, the appellate court remanded the case to the trial court with

directions to conduct an evidentiary hearing to determine the terms of a cooperation agreement between the defendant and law enforcement agents and to vacate his conviction and dismiss the indictment if the agents violated the agreement. *Schmitt*, 173 Ill. App. 3d at 106.

¶ 53 Even before *Schmitt* was decided, the Illinois Supreme Court addressed a similar issue in *People v. Starks*, 106 Ill. 2d 441 (1985).[3] The defendant in *Starks* alleged that he had submitted himself to a polygraph examination based on a representation by the state's attorney's office that an armed robbery charge would be dismissed if he passed the test. *Id.* at 444. The defendant apparently passed the test, but the state's attorney's office reneged on this part of the agreement. *Id.* The appellate court found that, if such an agreement existed, it was enforceable. *Id.* at 452. In the years between our supreme court's decision in *Starks* and the 2008 initiation of postconviction proceedings herein, Illinois courts have held that similar agreements are enforceable. *E.g.*, *People v. Smith*, 233 Ill. App. 3d 342 (1992) (upholding the enforceability of an agreement that, in exchange for procuring a cocaine seller for the undercover police officers, the State would dismiss charges against defendant and would grant her immunity as to those charges).

¶ 54 Based on the foregoing cases, the legal basis for defendant's claim regarding Detective Foley and the polygraph test was readily available prior to his initial postconviction proceedings in 2008. Defendant has therefore failed to demonstrate "cause" under section 122-1(f) of the Act, and he was properly denied leave to file his second successive postconviction petition. As defendant has failed to establish cause, we need not consider whether he established prejudice.

---

[3] We note that defendant raised the argument regarding Detective Foley and the polygraph test – and relied upon the 1985 decision in *Starks* – in his *pro se* petition for relief from judgment which he filed in 2014. While we recognize that his petition was subsequently withdrawn, we are hard-pressed to accept his contention that he was precluded from pursuing his claim prior to this court's 2015 decision in *Marion* or the Illinois Supreme Court's 2015 decision in *Stapinski*.

See *People v. Lee*, 207 Ill. 2d 1, 5 (2003) (noting that "[t]o establish that fundamental fairness requires that a successive postconviction petition be considered on the merits, the defendant must show both cause and prejudice with respect to each claim presented"); *People v. Howard*, 2021 IL App (2d) 190695, ¶ 21 (providing that a failure to establish either cause or prejudice is fatal to the claim).

¶ 55                                             CONCLUSION

¶ 56    For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed in its entirety.

¶ 57    Affirmed.